## The John Spry Lumber Company

*v.*

## Michael Duggan.

*Opinion filed October 19, 1899.*

1. Fellow-servants—*when relation of fellow-servants does not exist.* A workman hired and paid by an independent contractor, contemporaneously engaged in unloading lumber from a vessel, is not necessarily and as a matter of law a fellow-servant of yardmen employed by a lumber company to pile the lumber.

2. Master and servant—*falling of a lumber pile not an ordinary hazard.* The danger of a pile of lumber falling is not one of the risks assumed by an employee who necessarily passes by it, since the hazard is not ordinarily incident to the business.

3. Same—*when injured party is not a mere licensee.* An employee of an independent contractor engaged by a lumber company to unload a vessel is not a mere licensee, but the company is bound to exercise reasonable care for his safety while upon the premises.

4. New trial—*what not ground for a new trial.* That a piece of paper found in the jury room had twelve different amounts written upon it is insufficient to impeach the verdict on the ground that it represented the average of the several amounts voted by the jurors as damages, when the verdict as rendered and the average of the sums on the paper are widely apart.

*John Spry Lumber Co.* v. *Duggan,* 80 Ill. App. 394, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Henry B. Willis, Judge, presiding.

Appellant was engaged in the lumber business, and was unloading a boat-load of lumber upon a dock which it owned and controlled. Two sets or gangs of men were employed in unloading the cargo, one set passing the lumber out from the vessel and the other set receiving the lumber and piling it upon the dock. There is no dispute but that the set of men engaged upon the dock in receiving and piling the lumber were the yardmen in the regular employ of appellant. There is some dispute as to whether the set of men engaged in the work on the

boat of passing the lumber out to the yardmen on the dock were in the employ of appellant or one Hunt. There was evidence tending to show that Hunt was an independent contractor, who had taken, by contract with appellant, the job of furnishing men to do the unloading on the boat at a fixed sum. Appellant had upon its dock a water-closet, which was for the use of the men engaged in the work there. Appellee was one of the set of men on the boat passing the lumber out to appellant's yardmen. He undertook to go from the boat to the water-closet, and in so doing followed the route from the boat to the water-closet which, from the evidence, would appear to have been the most direct of any safe route. While on his way, in passing one of the piles of lumber placed by the yardmen, the pile of lumber fell upon him and injured him. In this suit to recover damages for such injury he was awarded a verdict for $1000, upon which judgment was entered. That judgment has been affirmed by the Appellate Court.

A. B. MELVILLE, and F. J. CANTY, for appellant.

JOHN S. HUMMER, and D. G. RAMSAY, (JOHN REID MC-FEE, of counsel,) for appellee.

Per CURIAM: In deciding the case the Appellate Court delivered the following opinion:

"The only question presented is as to the sufficiency of the evidence to sustain the verdict. No complaint is made of any ruling in matters of procedure. The instructions to the jury are not questioned, nor is it claimed that the verdict is excessive.

"It cannot be contended that from the evidence appellee can be held to have been guilty of any negligence on his part. It is clear, from the evidence, that the course which he pursued in attempting to reach the closet was the only direct route which could be pursued by him and be safe. To have taken a different course, as

suggested by some of the witnesses, would have brought
him in the way of the men who were handling the lumber
and would have exposed him to apparent danger.    Had
he taken such course and been injured by the moving lum-
ber he would doubtless have been held to have been so
far negligent in courting an apparent danger as to pre-
clude any right to recover therefor.

"There being no question as to the care exercised by
appellee for his own safety, we have to consider if negli-
gence of appellant has been established as to the proxi-
mate cause of the injury.

"There is no conflict in the evidence as to the cause
of the injury, and it may be said to be undisputed that
it resulted from carelessness on the part of the yardmen
in forming the pile of lumber in question.  The only de-
fense interposed by appellant is, in effect, that it is not
answerable to appellee for such carelessness, and that
the same cannot be imputed to it as negligence in rela-
tion to appellee.    In support of the contention in this
behalf, counsel for appellant argue, first, that appellee
was an employee of appellant and was injured by the neg-
ligence of a fellow-servant; second, that appellee was
an employee of appellant and was injured through a risk
which was an assumed hazard; and third, that if appel-
lee was an employee of Hunt and not of appellant, then
he was, in relation to appellant, a mere licensee, and
there existed no duty on the part of appellant toward
him by disregard of which a charge of negligence and a
right of action could here arise.

"The application of the doctrine of negligence of a
fellow-servant, here contended for, must depend upon a
showing, in the first place, that appellant was the com-
mon master or employer of appellee and the yardmen
through whose carelessness he was injured.  But the evi-
dence warranted the jury in finding that appellee was
not an employee of appellant at all, but the employee of
Hunt, an independent contractor, and the jury so found,

both by general and special verdict. Upon that finding there can be no application of a fellow-servant's negligence. Appellee testified that he was in the employ of Hunt. Four of the men who were engaged with appellee in the work on the boat, and whose employment was identical with that of appellee, testified that they were in the employ of Hunt. Hunt, who was called as a witness for appellant, testified: 'My business is vessel unloading. * * * I had charge of unloading the boat. I had the job to look after and unload the boat. I took the job in the spring to unload the boat, and get men for her every time she came, and unloaded her. * * * The boat paid $117.60. That was equally divided between twenty-eight men. I worked with the men on the boat. I counted among the twenty-eight. Mr. Spry engaged me and sent me word when the boat would come in and to get a gang of men to unload it, and I brought men there to unload the boat when it came.' Mr. Spry, called on behalf of appellant, testified: 'Martin Hunt would come up in the spring and say, 'Mr. Spry, can I unload your boat?' And I would say, 'Martin, what will you do?' And he would say: 'I want $4.20. I want ten cents for the water boy, ten cents for each man and $4 for each man.' Q. 'He wanted that for the season?' A. 'Yes, they took them for the season.'

"It was undisputed that appellant paid Hunt for the entire work and that appellee and the other workmen received their pay from Hunt. The finding of the jury that appellee was in the employ of Hunt, an independent contractor, and not in the employ of appellant, disposes of the contention. But if it were conceded that appellant was the common master or employer of both the yardmen and appellee, it would not, of necessity, follow that the doctrine contended for applied. It is apparent from the evidence that the relation between the men working on the boat and the yardmen working on the dock was not such as to make their duties 'bring them

into habitual association so that they may exercise a mutual influence upon each other promotive of proper caution.' (*North Chicago Rolling Mill Co.* v. *Johnson*, 114 Ill. 57; *Chicago and Alton Railroad Co.* v. *Swan*, 70 Ill. App. 331, affirmed in 176 Ill. 424.) The two sets of men had no relationship to each other, except that the ones upon the dock received the lumber from the ones upon the boat. Appellee and the others upon the boat had nothing whatever to do with the piling of the lumber, nor did their work bring them in contact with that part of the yardmen's work. Appellee's association with the yardmen was that of a day only, and it ended with the passing of the lumber over the rail of the vessel. We think that the jury would have been warranted in finding that they were not fellow-servants had there been proof of a common employer.

"Nor can the contention that the danger of the pile of lumber falling was an assumed hazard be maintained. If appellee had been an employee of appellant, it could not be said, from the evidence presented, that he had assumed the risk. It appears conclusively that such a danger was not ordinarily incident to the business, and that in fact it had never before occurred in the experience at that yard. Neither could it be said that appellee, with knowledge of the danger, continued in his employment.

"Finally, counsel for appellant contend that if appellee was an employee of Hunt, the appellant owed him no duty in the matter of keeping the surroundings upon the dock reasonably safe. In other words, it is argued that he was a mere licensee upon the premises of appellant. To this we cannot assent. Appellee was not a mere licensee, enjoying a license subject to its attendant perils. He was not upon the premises merely for his own convenience and pleasure. On the contrary, there was a relationship between him and appellant, arising from the contract between appellant and his employer, Hunt. The class of cases, many of which are cited, wherein one

visiting premises for his own pleasure or convenience is held to accept all perils accompanying the license, do not apply here. When appellant, for the purposes of his own business, contracted with Hunt to bring appellee and others to unload its vessel, it thereby not only invited, but contracted for, the presence of appellee, and became obligated to exercise reasonable care for his safety while upon his premises. (*Samuelson* v. *Cleveland,* 49 Mich. 164; *Drennan* v. *Grady,* 167 Mass. 415; *Evansville* v. *Griffin,* 100 Ind. 221; *Powers* v. *Harlow,* 53 Mich. 507; *Welch* v. *McAllister,* 15 Mo. App. 492; *Bennett* v. *Railroad Co.* 102 U. S. 577; *Indermauer* v. *Dawes,* 1 L. R. C. P. 274; *Heaven* v. *Pender,* 11 L. R. Q. B. Div. 503.) The jury could not have properly found, from the evidence, that the appellee was merely a licensee.

"Upon the motion for a new trial it was sought to impeach the verdict by showing that it had been reached by adding together the several amounts voted as damages by the several jurors and then taking the average of such amount. The showing in that regard was wholly insufficient to establish the fact. It consisted only in finding in the jury room a piece of paper upon which was some unimportant writing by the foreman, and upon which there were twelve different sums noted, the average of which was noted as $12,762. Whether the figures were used for the purpose claimed was matter of suspicion only, unsupported by anything which amounted to proof, and it is clear that the process alleged to have been used did not result in arriving at the amount for which the verdict here was rendered,—viz., $1000. The court properly disregarded the showing made in this behalf in overruling motion for new trial.

"The judgment is affirmed."

We concur in the views above expressed by the Appellate Court, and in the conclusion reached by that court as above announced. Accordingly, the judgment of the Appellate Court is affirmed.    *Judgment affirmed.*