ANSON C. SMITH v. TWIN CITY RAPID TRANSIT COMPANY and Others.[1]

July 12, 1907.

Nos. 15,244—(194).

**Negligence—Danger from Electricity.**

A street railway company, which contracts with an individual for the painting of the iron poles used by it to support the wires connected with its overhead trolley system, the wires being so arranged and insulated as, when in proper repair, to prevent the iron caps on top of the poles from being charged with electricity, is liable for injuries occasioned to an employe of the contractor who, while engaged in painting the cap on one of the poles, receives a charge of electricity from the cap, which had become charged because of the negligent failure of the company to maintain its appliances in proper condition and repair. The dangerous condition was not due to any act of the contractor or his employe, but to the negligence of the company alone, and it is immaterial whether or not the contractor was an independent contractor.

**Same—Evidence.**

In an action to recover damages for personal injury, *held*, that the evidence is sufficient to justify the conclusion that the defendant was negligent; that the plaintiff's intestate was not guilty of contributory negligence, and did not assume the risk; and that the deceased was thrown from the place where he was working by receiving a charge of electricity as the result of the failure of the street railway company to exercise proper care in the maintenance of its appliances.

Action in the district court for Ramsey county by the administrator of the estate of Arthur Smith, deceased, against the Twin City Rapid Transit Company, the St. Paul Railway Company and R. W. Moon to recover $5,000 for the death of his intestate. There was no appearance on behalf of defendant Moon. The case was tried before Brill, J., who denied defendants' motion that the court direct a verdict for each of the defendants, and the jury returned a verdict in behalf of plaintiff for $900. The defendant companies moved for judgment in favor of each notwithstanding the verdict. From an order denying the motion, they appealed. Affirmed.

[1] Reported in 112 N. W. 1001.

*Price Wickersham* and *Munn & Thygeson,* for appellants.
*J. R. Donohue* and *P. J. McLaughlin,* for respondent.

ELLIOTT, J.

Arthur Smith came to his death on June 28, 1906, while engaged in painting a pole belonging to the appellants, and this action was brought by the administrator of his estate to recover damages. The jury returned a verdict of $900 for the plaintiff, and the Twin City Rapid Transit Company and the St. Paul City Railway Company appealed from the judgment. For convenience the two corporations are treated as one party and referred to as the appellant.

The appellant was the owner of the street railway system of St. Paul. On June 28, 1906, it employed R. W. Moon to paint the "span wire poles," which form a part of the devices by which the trolley wires are supported aloft over the streets. These poles were of iron, and on top of each pole there was a cap to which the span wires were attached. The poles could not become charged, and the connecting wires were so arranged and insulated as, when in proper order, to prevent the caps from becoming charged. The deceased was one of a number of men employed by Moon to do the work of painting these poles, including the caps; and it is claimed that while so engaged he was knocked from the pole by the electricity in the cap and thrown to the ground and killed.

In the complaint it is charged:

> That through the negligent and defective construction of said span wire pole, span wires, trolley wires, feed wires, and other appurtenances thereto belonging, and through the failure and neglect of the said defendants to properly insulate and protect the trolley wires and feed wires, which were heavily charged with electricity, and through the careless and negligent operation of the same, the said span wire pole and attachments, aforementioned as the one which plaintiff's intestate was ordered to paint, became and was heavily charged with electricity, and was thereby rendered unsafe and dangerous, all of which the said defendants well knew, and in the exercise of ordinary care and diligence they should have known, and all of which was unknown to the plaintiff's intestate.

That the defendants negligently allowed, maintained, used, and operated the same in such dangerous and unsafe condition, and negligently caused and permitted the same to become and remain unsafe, dangerous, and out of repair for an unreasonable length of time, all of which they well knew, and in the exercise of ordinary care and diligence they should have known, and they negligently failed and neglected to warn plaintiff's intestate of the danger connected therewith, which was unknown to him, and negligently failed and neglected to instruct plaintiff's intestate as to his duties in that regard, and negligently failed and neglected to protect plaintiff's intestate in his said work.

The appellant contends that there was no evidence from which a jury could reasonably find that the deceased received a shock of electricity, that there was no evidence tending to prove that the cap became charged with electricity through its negligence, that the duty to warn the deceased of the danger connected with painting the caps was clearly and positively fulfilled, and that the deceased assumed the risk and was guilty of contributory negligence.

Any detailed consideration of these questions would require the transfer of all the evidence into this opinion. This seems to be unnecessary. It is true that no one saw the deceased until he was falling from the ladder, and the evidence is not conclusive that he had received a shock of electricity before he fell; but, when we take into consideration the circumstances and conditions, it is certainly reasonable to conclude that such was the fact. The probabilities are strongly in favor of the conclusion to which the jury arrived, and a court would not be justified in interfering with the verdict upon this ground. The evidence showed with reasonable certainty that the defendant was negligent, and this is certainly true if the deceased was put to work at painting these poles without proper instructions with reference to the danger and the method of avoiding it. We are strongly impressed by the evidence offered to show that proper instructions were given; but there is at least strong circumstantial evidence to the contrary, and the issue was thus one for the jury to determine.

The plaintiff claimed that the deceased was not warned as to the danger attending the situation. The defendant claimed that he was warned

of the danger, and told how to test the caps for the purpose of discovering whether they were charged with electricity. It is conceded that the appellant was required to give him such information and instructions with regard to the situation as a person of ordinary prudence would give under the circumstances. The jurors were told that they were to determine from the evidence whether such instructions and information were given the deceased as were calculated to advise him of the situation and enable him to protect himself. They evidently came to the conclusion that proper instructions were not given.

The questions of contributory negligence and assumption of risk were for the jury. If the deceased knew that the cap was charged with electricity, he attempted to paint it at his peril. If he had not such knowledge, there is nothing in the evidence from which to find that he was guilty of contributory negligence. Danger from electricity is not one of the ordinary risks which a person who undertakes to paint such poles assumes. If the electrical apparatus is properly insulated and kept in repair, the painting of the pole may be done with perfect safety. The danger of the cap being charged is an extraordinary risk, which is not assumed unless it is fully understood and appreciated. The evidence did not require the conclusion as a matter of law that this extraordinary risk was assumed.

It is further contended that the deceased was in the employ of an independent contractor and that the appellant fully discharged its duty when it warned the contractor, Moon, of the dangers to which his men would be subjected. It is not certain that Moon was an independent contractor. The question does not seem to have been considered by the trial court, as no reference is made to it in the charge. Assuming, however, that Moon was an independent contractor, it does not follow that the appellant is relieved from responsibility for its negligence. The dangerous condition was not created by the contractor, or by any of his employes. It was not in any way necessarily connected with the performance of the work of the contractor. The painting which the contractor agreed to do was to be done in places and under conditions which were safe so long as the appellant maintained its wires and appliances in proper condition. The danger originated when this duty was neglected. The duty to use the proper degree of care was owing directly to the deceased, and for damages resulting

from a breach of such duty the appellant is liable. It is not a question of the duty which an independent contractor owed to his employe, but of the duty which the appellant owed to any person who was working in the vicinity of its dangerous appliances.

The judgment is therefore affirmed.