[Civ. No. 1930. First Appellate District.—November 21, 1916.]

GEORGE J. BLACK, Appellant, v. WAREHOUSE INVESTMENT COMPANY (a Corporation), Respondent.

NEGLIGENCE — FALL INTO UNGUARDED ELEVATOR SHAFT — LIABILITY OF DEFENDANT—AUTHORITY OF REPRESENTATIVE—NONSUIT ERRONEOUS. In an action for damages for personal injuries sustained by the employee of a company engaged in the erection of steel beams or girders for a railroad track entering a warehouse building being constructed by the defendant, it is error to grant a motion for a nonsuit at the close of the plaintiff's case, where it is shown by the evidence that the plaintiff was injured by falling into an unguarded elevator shaft while on his way to the office in the adjacent building, also belonging to the defendant, for the purpose of telephoning for the delivery of the beams, and that permission to use such telephone was given to plaintiff's employer by the person who approved the agreement for the placing of the beams for the defendant, and who directed the main work on the building.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

Grant & Zimdars, and William H. Bryan, for Appellant.

Redman & Alexander, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in defendant's favor following an order granting defendant's motion for a nonsuit.

The action was one for damages for personal injuries sustained by the plaintiff by falling into an unguarded elevator shaft in a building owned by the defendant. The facts upon which the plaintiff relied for his recovery, and upon which he predicates his claim for a reversal of said judgment, are substantially these: The defendant Warehouse Investment Company was, at and for some time prior to the injury complained of, the owner of a warehouse in San Francisco fronting on Townsend Street on the north, and extending to King Street, designated in the record herein as the "old" building. The said defendant was also at the time of the accident engaged in the erection of another warehouse building designated as the "new" building, adjacent to the former building but fronting on King Street and extending back to a private alley, also owned by the defendant, and which ran through, and under the second floor of, the old warehouse building. The general brick and steel work of the new building was being done under a contract with Anderson & Rainey, but from the operation of this contract had been specially excepted the erection of two large steel beams or girders for a railroad track entering the building in the outside wall on King Street. On the morning of June 14, 1913, the work of construction in that part of the building had so far progressed that it was ready for the placing of these beams, which were at the time in the possession of the Overland Freight Transfer Company, whose duty it was to transport them to the place of their erection when notified so to do. On the evening of June 13, 1913, a Mr. Qualters, an employee of the Overland Freight Transfer Company, met a Mr. Johnson, representing the California Erecting Company, and arranged with him to put the beams in place on the following morning. The plaintiff herein was an employee of Johnson or of his company, and was with him at the time of this interview with Qualters, who then gave Johnson a card bearing the telephone number of a stable, to which the latter

was to telephone when all was in readiness for the hauling of the beams to their place of erection. Qualters, at the time, stated that he would have to take up the matter of the agreement with Johnson for the erection of the beams with a Mr. Tilden, who, he said, was the boss at the building, for the latter's approval. On the following morning Johnson, Qualters, and Tilden met at the building, and the agreement being approved by the latter, Johnson, the plaintiff, and others went ahead with the work of preparation for putting the beams in position, and while such work was in progress Tilden informed Johnson that, ''We got a telephone in there, and you can go and use that phone, and phone to the barn when you are ready for the beams,'' at the same time pointing out to him where the office in the old building in which such telephone was situated was to be found. When all was ready Johnson told the plaintiff Black to go to the indicated telephone and send the message to the barn for the delivery of the beams. It was while Black was undertaking to fulfill this mission that he fell into the unguarded elevator shaft in the old building and sustained the injuries which form the basis of this action. This elevator shaft lay in the line of a driveway, on the ground floor of the old building, which could be entered by way of the alley-way which ran along the north end of the new building and intersected said driveway. It was along the most direct way to the office of the old building in which was the telephone to which the plaintiff had been directed to go, and it was while going along this route that the plaintiff fell into the unguarded shaft of said elevator.

At the trial, and upon the conclusion of the plaintiff's case, the defendant Warehouse Investment Company moved for a nonsuit upon the ground chiefly that no evidence had been presented connecting the said defendant with the accident or with the plaintiff's injuries, or showing or tending to show that the plaintiff was other than a mere trespasser, or at most none other than a licensee in entering the building in which the accident occurred; and that there was no evidence that said defendant was in possession of the old building at the time of the accident. The court granted the motion for nonsuit, and gave judgment for the defendant thereon.

In so doing we are of the opinion that the court was in error. We are satisfied from a careful reading of the record

that there was some substantial evidence before the court tending to show that Mr. Tilden was the representative of the Warehouse Investment Company in general charge of the work of construction being done upon said warehouse. Mr. Qualters referred to him as the "boss," and required and received his approval of the agreement with Johnson. It was he who told Johnson where the telephone was located to which the plaintiff was presently directed to go. During the progress of the main work upon the building Mr. Tilden was shown to have been present directing the work. In addition to this the plaintiff offered proof that the principal contract for the brick and steel work was entered into by the contractors with Mr. Tilden, as the representative of the defendant at the warehouse, in respect to that portion of the work of construction both at and after the time of the plaintiff's injuries. The court sustained the defendant's objection to this offer, and this, we think, was also error. Such offered proof, taken in connection with the facts that said Tilden was to approve and did approve the particular agreement with the plaintiff's employer, and did direct him to the place where the telephone was located to which the plaintiff was going at the time he received his injuries, would, in our opinion, have furnished both competent and substantial evidence tending sufficiently to show the general authority of Tilden, as the defendant's agent and representative at the place and time of plaintiff's injuries, to entitle the latter to have the case go to the jury.

For both reasons we think the judgment must be reversed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 19, 1917.