[Civ. No. 6513. First Appellate District, Division One.—December 27, 1928.]

HENRY DOBBIE, Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, Charles E. Finney, George F. Jones and Leo H. Susman for Appellant.

Edwin V. McKenzie and Jesse H. Miller for Respondent.

THE COURT.—This action was brought by plaintiff, Henry Dobbie, against appellant, Pacific Gas and Electric Company, a corporation, hereinafter called the gas company, to recover damages for personal injuries sustained on its premises.

The plaintiff, a sheet and metal worker, was in the employ of W. Heidt, an independent contractor, who was under contract with the gas company to reconstruct a blast-pipe and do other work of like character in and about the generator building of the plant of the company in San Francisco.

The complaint alleged that on the day of the accident and for a long time previously there had existed on the roof of the generator building a glass skylight, which was near the place where the plaintiff was required to work; that the

gas company had knowingly permitted the skylight to become covered to a depth of several inches with cinders and soot discharged from its gas generators; that this rendered the skylight invisible to any person on the roof of the building and caused the same to appear to be a part of the solid portion of the roof; that the true conditions were unknown to plaintiff, who, in the course of his employment, stepped upon the skylight, which broke with his weight, precipitating him to the floor below and causing his injuries. A jury returned a verdict against the gas company, which has appealed from the judgment entered thereon.

As grounds for reversal it is urged that no actionable negligence on the part of the gas company was shown; that plaintiff was guilty of contributory negligence as a matter of law; that certain of the court's rulings were prejudicially erroneous, and that two of its instructions were disregarded by the jury.

Appellant's generator building is a steel frame structure about 160 feet in length east and west, 75 feet in width, and is walled and roofed with corrugated iron. The roof is of the gable type sloping north and south from the ridge. The building has two floors, the first the ground floor, and the second called the generator floor, which is of steel. It is about 26 feet below the ridge of the roof. In the building are located four gas generators, each consisting of a furnace on the ground floor, topped by a cylindrical shell protruding through the generator floor to a height of about 20 feet. On this is a second cylindrical shell of smaller diameter which protrudes through the main roof of the building, and above which is a metal stack 15 feet high capped by a spark-arrester. The process of gas-making consists in spraying crude oil into the generator shells, where it is cracked or decomposed by heat, and the gas separated from other ingredients of the oil. The gas is then filtered to remove a residue of carbon or lampblack, and at this plant about 250 tons of this substance was produced each 24 hours. In the process a portion of the lampblack adheres to the brick interior of the generators. This is expelled at intervals into the stacks in the form of soot and cinders which, unless prevented by the spark-arresters, pass into the open air. The generators are numbered, the one nearest the east end of the building being number 5 and that next to the west

number 6. Between and to the north of these is the skylight in question, which is also below another skylight upon the ridge of the building and between it and the north wall. The skylight upon the ridge projects above the level of the main roof, but the one in question is sunk in a light-well below the level of the main roof. Immediately below the upper skylight and at the upper or south end of the light-well a plank walk 23 inches in width was built across from east to west. The light-well, which is about 20 feet wide, begins underneath this walk and extends to the north wall of the building. The skylight therein, which is 4 feet 10 inches below the level of the main roof, is composed of 10 panes of reinforced glass each 8 feet 6 inches long and varying from 17 to 24½ inches in width. These are held in place by metal bars running lengthwise between the panes, their elevation above the panes being 1¼ inches. A portion of the bottom of the light-well both north and south of the skylight is covered with corrugated iron roofing. Crossing the light-well immediately north of the glass panes and about 3 feet below the level of the roof is a blast-pipe 36 inches in diameter, which is used for supplying air to the generators 5 and 6. At each generator a spiral steel stairway leads from the generator floor to the top of the lowest generator shell, and from this point another steel stairway leads to the top of the upper generator shell on the main roof of the building. That from generator number 5 opens upon the roof a few feet to the east, and that from generator number 6 the same distance to the west of the light-well.

On the afternoon of the day of the accident the plaintiff was working at appellant's boiler-house on the same premises. He had previously worked on the ground floor of the generator building but not upon the generator floor. About thirty minutes before the accident occurred he was instructed by his foreman, Volz, to accompany another employee, named Tucker, to the generator building for the purpose of riveting certain flanges and iron sheets about the blast-pipe mentioned above. Tucker there pointed out the place where plaintiff was to work, this being upon a scaffold within the building which was placed near the west wall of the light-well and at about the level of the blast-pipe mentioned. It appears that two men were required for this work, one within and the other without the building, and that Tucker then took a position on the outside of the wall

mentioned and within the light-well, seating himself upon the blast-pipe near the west wall. According to their testimony, the metal sheets which they were instructed to rivet bulged in a manner which prevented the doing of the work. They were unable to see one another owing to their positions, and the noise about the plant prevented intelligible communication. Tucker, wishing to explain the situation to the plaintiff, then passed through an opening which had been made in the east wall of the light-well, thence along a scaffold and down the stairway leading from the top of the lowest generator shell of generator number 5 to the generator floor; from there he went to the stairway at generator number 6, and thence to the scaffold where the plaintiff had been working. In the meantime, however, the plaintiff, for the purpose of apprising Tucker of conditions and to consult with him, had left the scaffold which extended to the top of the lowest generator shell of generator number 6, thence down the metal stairway running from there to the generator floor. From the floor he went to the stairway at generator number 5 and ascended to the roof of the building. This point was east of the light-well, and from there, according to his testimony, he saw a workman in a stooping position at about the place in the light-well where Tucker testified that he had been working. This workman, named Koennecke, according to the testimony, had been assisting Tucker and remained in the light-well while the latter went below to communicate with plaintiff. The plaintiff then crossed the light-well by the plank walk mentioned and walked to the north to a point about 18 inches north of the south end of the most westerly pane of the skylight. There he lowered himself into the light-well until his feet rested upon the skylight, which gave way. He fell to the generator floor, receiving the injuries for which he sought to recover.

It was testified by the plaintiff and other witnesses who were employed on the building at the time of the accident, including the foreman, Volz, that soot and cinders completely covered the skylight, giving it an appearance similar to that of the roof proper; and, according to the testimony of both Tucker and Koennecke, who had been working in the light-well before and on the day of the accident, neither discovered the skylight until shortly before the accident hap-

pened. These witnesses also testified that they had not observed it from the floor below. It further appears from the testimony of an employee of appellant that it had been his duty to sweep the skylight weekly, in order to remove the accumulation of cinders, but that after Heidt commenced work under his contract, which was about four weeks previous to the accident, this was not done.

■ The negligence charged was in permitting the skylight to become obscured, so that it constituted a hidden danger to invitees. Appellant contends, however, that the plaintiff, at the place where the accident occurred, was a mere licensee and not an invitee, and that in either case no neglect of duty on its part was shown.

The plaintiff, as stated, was unable to carry out the work according to instructions, nor could he from his position communicate with Tucker, his superior. It is clear from his testimony that his object in going to the place where the latter had been stationed was not his own pleasure or benefit but the benefit of his employer. His going had not been forbidden, and under the circumstances the conclusion that the act was impliedly authorized was not unreasonable. Moreover, his destination was a place in the building where the same work in which he had been engaged was being carried on by his employer, this portion of the premises, as appellant states, having been practically turned over to the latter. These facts were such as to make the question of his right to go to that part of the building one for the jury, and support their implied finding that he was an invitee (*Bush* v. *Weed Lumber Co.*, 63 Cal. App. 426 (218 Pac. 618]; *McKee* v. *Bidwell*, 74 Pa. 218; 1 Thompson on Negligence, p. 907, sec. 989).

■ It is further claimed that, assuming plaintiff to have been an invitee, his selection of the route followed in order to reach the light-well constituted negligence as a matter of law. According to the testimony, an opening for temporary use had been made and left by the contractor in the east wall of the light-well, and from this opening a temporary scaffold extended to the lowest shell of generator number 5. This was the way followed by Tucker in reaching the generator floor; but it is evident from plaintiff's testimony that he was not aware that the light-well could be reached in this manner. The route followed by him from the generator floor to the roof was that which appellant had provided for

its employees; and while it was longer than that taken by Tucker, it could be and was followed without hazard. Moreover, after reaching the roof the plaintiff crossed the lightwell in safety on the plank walk provided by appellant, and only arrived at a place of danger when he stepped upon the skylight. The route followed was both practicable and convenient, and the only other or safer way than that pursued was unknown to him. Under such circumstances the fact that it ultimately proved to be dangerous did not make his conduct negligent as a matter of law, and the question was one for the jury (*Roseberry* v. *Niehaus & Co.*, 166 Cal. 481 [137 Pac. 232]; *Cozad* v. *Raisch Improvement Co.*, 175 Cal. 619 [166 Pac. 1000]). ■ The owner of premises is not an insurer of the safety of an invitee, but he owes him the duty to exercise ordinary care in seeing that the premises are in a safe condition (*Means* v. *Southern California Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001]).

■ As the rule is stated in *Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 Pac. 793], "A person so invited upon the premises of another may recover from such owner for any injuries received owing to the dangerous condition of the premises known to the owner and not to the person so invited, but such person is not bound to keep his premises absolutely safe (29 Cyc. 543). The responsibility of such owner for the safety of such person in such case is not absolute. He is only required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger. But such owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give the invitee notice or warning of an obvious danger."

Notwithstanding evidence that the plaintiff had no actual knowledge of the skylight and that the same was a source of danger, appellant claims that the fact that the contractor and his foreman, as was testified, knew or had notice of the condition, relieved appellant of the duty of warning employees of the contractor. In two California decisions cited in support of this contention, it is intimated that knowledge

by the contractor or notice to him of the unsafe condition of the premises should be imputed to his employee (*Brown* v. *Board of Trustees*, 41 Cal. App. 100 [182 Pac. 316]; *Jacobson* v. *Northwestern Pac. R. R. Co.*, 175 Cal. 468 [166 Pac. 3]). An examination of these cases discloses, however, that the expressions relied upon were unnecessary for their determination, the decision in each case being that under the circumstances shown no warning of the danger was necessary. In the first the death of an employee of an independent contractor was caused by the fall of an unsupported wall of a burnt building. It was held that the deceased, by the exercise of ordinary care, could have observed the danger, and that under such circumstances it was unnecessary for the owner to give warning. In the second it appeared that an employee of an independent contractor, actuated solely by curiosity or for his own convenience, went upon a platform where there had been installed highly charged electric wires and was killed. It was held that as to the owner he was but a licensee, and that the injury resulted solely from his own negligence.

The case of *Proctor* v. *San Antonio R. Co.*, 26 Tex. Civ. App. 148 [62 S. W. 939], is also cited by appellant. In that case the deceased was the father of one of the independent contractors and had brought the latter's lunch to the power-house owned by the defendant. The contractors were engaged in removing a pile of cinders over which at a height of about seven feet was stretched a trolley wire. The deceased was not employed in the work on the premises, and the owner was not shown to have had knowledge of his presence. The deceased casually took up a hoe and dug into the pile of cinders. While so doing the hoe was elevated above his head and struck the trolley wire, from which he received a shock which caused his death. It was held that the duty, if any there was, to warn the deceased of the danger devolved upon the contractor and not upon the owner. While the court does not so hold, it is clear from the facts that the deceased was but a licensee (*Gibson* v. *Sziepienski*, 37 Ill. App. 601; *Indian Refining Co.* v. *Mobley*, 134 Ky. 822 [24 L. R. A. (N. S.) 497, 121 S. W. 657]; *Freeman* v. *United Fruit Co.*, 223 Mass. 300 [111 N. E. 789]; *Kinsman* v. *Barton*, 141 Wash. 311 [251 Pac. 563]).

While the relation of master and servant does not

subsist between the owner and the servants of an independent contractor, and the obligations of a master are not imposed upon the former (*Schmidlin* v. *Alta Planing Mill Co.*, 170 Cal. 589 [150 Pac. 983]), nevertheless the contractor's servants while engaged in the performance of the contract are deemed to be upon the premises by the owner's invitation, express or implied (*John Spry Lumber Co.* v. *Duggan*, 182 Ill. 218 [54 N. E. 1002]; *Gagnon* v. *St. Maries Light & Power Co.*, 26 Idaho, 87 [141 Pac. 88]). He therefore owes the same duty of guarding them against hidden dangers thereon as he would to a guest, customer, or other person who came there by his invitation (*Black* v. *Warehouse Investment Co.*, 32 Cal. App. 154 [162 Pac. 403]; *Union Oil Co.* v. *Rideout*, 38 Cal. App. 629 [177 Pac. 196]; 1 Thompson on Negligence, secs. 680, 970; 19 Cal. Jur., Negligence, sec. 53, p. 618); and it is his duty to warn them of any danger in coming of which he knows or, as a prudent person ought to know and of which they are not aware (*Ryan* v. *St. Louis Transit Co.*, 190 Mo. 621 [2 L. R. A. (N. S.) 777, 89 S. W. 865]). ■ The duty, however, arises from the invitation and not from the contract between the contractor and the invitees, this being but the occasion for the invitation; and the fact that the invitees are servants of the contractor does not relieve the owner of any duty owing to them as invitees (*Stevens* v. *United Gas & Elec. Co.*, 73 N. H. 159 [70 L. R. A. 123, 60 Atl. 848]; *Fidelity & Casualty Co., etc.*, v. *Llewellyn*, 42 Cal. App. 766 [184 Pac. 402]; *Smith* v. *Twin City etc. Co.*, 102 Minn. 4 [112 N. W. 1001]; *Newingham* v. *Blair*, 232 Pa. 511 [81 Atl. 556]). ■ Moreover, the duty cannot be delegated; and the contractor's knowledge or notice to him of the danger is not imputable to his employees, who are invitees (*Lechman* v. *Hooper*, 52 N. J. L. 253 [19 Atl. 215]; *Stevens* v. *United Gas & Elec. Co., supra; Woodman* v. *Metropolitan R. Co.*, 149 Mass. 335 [14 Am. St. Rep. 427, 4 L. R. A. 213, 21 N. E. 482]; *Pittsfield Cottonware etc. Co.* v. *Pittsfield Shoe Co.*, 71 N. H. 522 [60 L. R. A. 116, 53 Atl. 807]; *Rolfe* v. *Boston & M. Ry. Co.*, 69 N. H. 476 [45 Atl. 251]; *Cabot* v. *Kingman*, 166 Mass. 403 [33 L. R. A. 45, 44 N. E. 344]; *Engel* v. *Eureka Club*, 137 N. Y. 100 [33 Am. St. Rep. 692, 32 N. E. 1052]; *Smith* v. *Twin City etc. Co., supra; United States Cast Iron Pipe Co.* v. *Sullivan*, 3 Fed. (2d) 794).

■ It being shown that the skylight was concealed by cinders and soot to an extent that the danger therefrom was not readily apparent, and that this condition was likely to occur unless steps were taken to prevent it was known to appellant, also that the greater portion of the work under the contract was to be performed in and about the light-well, and it being undisputed that no warning of the conditions was given to the plaintiff, the question whether the latter at the place of the injury was an invitee using ordinary care for his own safety, and the further question whether appellant under all the circumstances used a like degree of care in seeing that its premises were in a safe condition, were both for the jury.

■ Appellant complains that the court erroneously amended an instruction offered by it. The instruction as given was in substance that before the plaintiff could recover the jury must find that, if the skylight was so covered with cinders as to be invisible, the existence of the skylight was unknown to the plaintiff or his employer. It is claimed that the court erred in striking from the offered instruction after the word "employer" where that word appears therein the words "or his foreman." In view of the above authorities this was not error, nor was the refusal of an instruction to the effect that, if the contractor or his foreman had knowledge of the existence of the skylight a sufficient time before the injury to have warned the plaintiff of its existence, no duty to do so rested upon appellant.

■ Appellant also claims that instruction number 9 given by the court was disregarded by the jury. By this instruction the jury was told that before the plaintiff could be entitled to a verdict it must find . . . 3, that if said skylight was so covered with cinders and soot as to be invisible and unobservable as alleged, the existence thereof was unknown to plaintiff or to his employer; 4, that if said skylight was covered over as claimed, defendant had knowledge thereof, and with such knowledge failed to warn plaintiff or his employer of the existence of such skylight . . . " Although the evidence shows that both his employer and his foreman knew of the existence of the skylight previous to the accident—and it may be conceded that a finding by the jury to the contrary would be unsupported—nevertheless, in view of our conclusions above stated the instruction, so far as it required as a condition to recovery a want of knowledge

on the part of the employer or his foreman of the existence of the skylight, or that appellant failed to warn them of its existence, was erroneous; and the fact that the jury disregarded it is not ground for reversal (*Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100 [45 Pac. 1047]; *Edwards* v. *Wagner*, 121 Cal. 376 [53 Pac. 871]; *O'Neill* v. *Thomas Day Co.*, 152 Cal. 357 [14 Ann. Cas. 970, 92 Pac. 856]; *Compressed Air Co.* v. *San Pablo etc. Co.*, 9 Cal. App. 361 [99 Pac. 531]; *Lucas* v. *Walker*, 22 Cal. App. 296 [134 Pac. 374, 379]).

At the trial the contractor was asked the following question by appellant: "Was there any occasion for the men in doing the work to go on top of the main roof?" The court sustained an objection thereto on the ground that the question called for the opinion of the witness, and this ruling is also assigned as error. The question referred to the fact that the plaintiff in his attempt to communicate with Tucker followed a different route than that taken by Tucker. The objection was, we think, properly sustained, as it was for the jury to determine from all the circumstances whether the plaintiff was reasonably justified in going upon the roof, a question which did not call for the aid of opinion evidence. Furthermore, the admission or exclusion of such evidence rests largely within the discretion of the trial court, which in the present instance was not abused (*Nolan* v. *Nolan*, 155 Cal. 476 [132 Am. St. Rep. 99, 17 Ann. Cas. 1056, 101 Pac. 520]; *Maris* v. *H. Crummey, Inc.*, 55 Cal. App. 573 [204 Pac. 259]).

From a review of the whole record including the evidence we are of the opinion that the trial court did not err in submitting the case to the jury, and that its determination of the issues is fairly supported by the evidence.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on January 26, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1929.

All the Justices present concurred.