[L. A. No. 16606. In Bank.—July 27, 1938.]

JOE MONDINE, Respondent, v. JEAN P. SARLIN, Appellant.

Joseph Scott, J. Edward Keating, Robert F. Shippee and J. Howard Ziemann, for Appellant.

William M. Rains, E. D. Reiter, Ellis D. Reiter, Walter S. Barrette, Francis M. Reiter and Albert L. Denney for Respondent.

EDMONDS, J.—By the verdict of a jury the plaintiff was awarded $20,000 in an action for personal injuries resulting from an explosion of gasoline. The defendant Jean Sarlin has appealed from the judgment.

At the time of the accident the appellant owned a plant for the storage and sale of gasoline in wholesale quantities. The respondent, who was in the business of trucking and selling petroleum products, drove his tank-truck to the appellant's premises for the purpose of buying gasoline. The service tank from which he usually filled his truck was empty, and he volunteered the use of his truck to fill this tank from a storage tank located a short distance away. He placed his tank-truck, which had a capacity of 1,000 gallons, near the storage tank and helped one of appellant's employees place a

portable electric pump in position. The appellant provided a two-inch rubber hose to connect the storage tank and the pump. Another hose was connected to the discharge end of the pump and inserted into the tank on the truck through a dome.

A flexible cable, consisting of four wires encased in random lengths of rubber garden hose, was connected at one end to a power line in the switch house. The other end of this cable terminated in a four-prong plug, which was inserted in a socket on the motor. The electricity could be turned on or off either by a switch in the switch house or by pulling the plug from the socket.

After the hose connections were made, the appellant turned on the electricity and gasoline began to flow into the tank-truck and he and one of his employees who had assisted in setting up the pump left the scene, leaving the respondent alone. Mondine then stepped on the running board of his truck in a position where he could see the amount of gasoline flowing into it.

According to his testimony, about eight or ten minutes after the pumping commenced he glanced at the electric motor and saw sparks four or five inches long coming from it. He estimated that at that time the tank on his truck was a little less than half full. Jumping to the ground he started for the motor, intending to disconnect it from the power by pulling the cable out of the socket. Before he reached the motor an explosion occurred. The hose pulled out of the tank on the truck, spraying gasoline over a considerable area. Some of this gasoline fell on the respondent, whose clothes caught on fire, causing him to be severely burned.

The evidence shows that the motor and the pump had been used by the appellant almost daily for more than three years. During that time, it appears, there was no indication of any defect in the motor and the respondent himself had used the same equipment on numerous occasions before the accident occurred. In view of these facts the appellant contends that there is no substantial evidence to establish negligence on his part. More specifically, he argues that the defect in the motor was latent and that he, therefore, owed no duty to the respondent to discover it.

■ An owner owes no duty to a patron or business invitee to keep his premises in a condition of absolute safety and is not bound to discover defects which reasonable inspection would not disclose. (*Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 Pac. 793].) But he is required to have a superior knowledge of dangers which would not be obvious to the patron if such dangers are discoverable in the exercise of due care. (Sec. 344, Restatement of Torts; *Dobbie* v. *Pacific Gas & Elec. Co.*, 95 Cal. App. 781 [273 Pac. 630].) ■ The respondent in the present case was performing a gratuitous service for the appellant's benefit and he had a right to expect that the apparatus furnished him for that purpose was in reasonably safe condition. ■ One who supplies a chattel for another to use for the supplier's business purposes is under a duty "to exercise reasonable care to make the chattel safe for the use for which it is supplied" and "to discover its dangerous character or condition". (Sec. 392, Restatement of Torts.) In comment b. following this section it is said: "A person so supplying goods is required not only to give warning of dangers which he knows are involved in the use of the article, or which from facts within his knowledge, he knows are likely to be so involved, but also to subject the article to such an inspection as the danger of using it in a defective condition makes it reasonable to require of him." In *Harvey* v. *Machtig*, 73 Cal. App. 667 [239 Pac. 78], it was said: "To use and keep in operation a device or apparatus upon which the safety of human life depends, without it being frequently or properly tested as to its continued strength and efficiency to meet the purposes for which used, is not such reasonable care as a prudent man should take to guard the safety of those intrusted to his protection."

■ There is no evidence that the appellant made any inspection of the apparatus at any time prior to the accident. Considering the dangerous use to which the motor was constantly subjected, it was clearly for the jury to decide not only whether the appellant had made reasonably frequent inspection of his equipment but also whether inspection would have revealed a defect. It is true that a witness for the appellant testified that an inspection of the motor made after the accident disclosed no defects, but it was, admittedly, examined under different conditions, and the jury was at

liberty to accept respondent's testimony that the motor was sparking at the time of the explosion as the cause of the accident.

There is a further ground upon which the jury's implied finding of negligence may be sustained. The motor used was an open-vent model, that is, its mechanism was exposed by four ventilating windows in the casing. Considering the fact that this motor was being operated in proximity to a highly inflammable substance, this court cannot say as a matter of law that the appellant acted with reasonable prudence in leaving the respondent alone in the attendance of the apparatus. Had he or his employee remained near the pumping apparatus, the sparks might have been discovered before the respondent saw them or the current disconnected at an earlier time.

Nor do the facts shown compel the deduction that the respondent was contributorily negligent. The appellant argues that the evidence established that the respondent knowingly and voluntarily approached a known danger and that he may not invoke the doctrine of "imminent peril". The fallacy apparent in the appellant's contention is that he assumes the respondent was not in a position of danger at the time he discovered that the motor was sparking. The imminent peril rule has no application where one voluntarily leaves a place of safety and places himself in danger (*Bartuluci* v. *San Joaquin Light & Power Corp.*, 21 Cal. App. (2d) 376 [69 Pac. (2d) 440]), but the facts here shown do not present such a case. Respondent was on the truck and within twenty feet of the motor when he discovered the danger. He was within the zone of peril at the time and there was no opportunity for mature deliberation. He was faced with the immediate choice of running away or of turning off the electricity either at the motor or in a switch house near by. The jury could well conclude that his decision to disconnect the electric plug at the motor was not unreasonably imprudent under the circumstances. The fact, as he testified, that the thought of serious danger to the appellant's uninsured property flashed through his mind does not necessarily indicate that he had time to reflect. The reasonableness of his decision was properly a question for the jury. (*Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596 [112 Pac. 53].)

■ The appellant finally contends that the amount of damages awarded to the respondent by the jury is greatly out of proportion to the injuries which he received. Although the sum to be allowed as damages for personal injuries is within the discretion of the jury, the power of this court to relieve a defendant from a grossly excessive judgment has often been recognized and exercised. (*Livesey* v. *Stock,* 208 Cal. 315 [281 Pac. 70] ; *Epply* v. *Los Angeles Creamery Co.,* 216 Cal. 194 [13 Pac. (2d) 664].) But before an appellate court may interpose its judgment as to the sum which will compensate a plaintiff for personal injuries, it must appear that the recovery is so excessive, when compared with a sum reasonably warranted by the evidence showing the nature and extent of the injuries received, as to shock the sense of justice·and raise a presumption that the amount was arrived at as the result of passion and prejudice rather than upon a fair and honest consideration of the facts. (*Slaughter* v. *Van Winkle,* 213 Cal. 573 [2˙ Pac. (2d) 789].)

■ At the time of the accident the respondent was 49 years of age. His average annual net income for seven years preceding the accident had been between $2,500 and $3,000. He received extensive skin and third degree burns involving the whole right side of his body from the right ear and right side of his face to his right thigh. Undoubtedly these burns caused considerable pain. He was confined to the hospital for about a month and to his bed at home for about six months. More than 200 skin grafts had been performed at the time of the trial, and others were to be made. The cost of hospitalization and medical service amounted to about $1200 at the date of trial. A physician testified that the resulting scars would be permanent and that the function of the right arm and hand would be impaired. According to the witness he will never be able to close his right hand completely. As against the evidence concerning respondent's disability, the parties have stipulated that in February, 1938, respondent was, and for six months prior thereto, had been engaged in his former business and occupation of truck driver and independent dealer in petroleum products "except that he no longer engages in the tasks of loading and handling the hose connected with such occupation". This shows that his permanent disability is much less than that

expected by his physician and that his earning power has not been greatly impaired.

Considering these facts, it is apparent that practically the only permanent injury which respondent has sustained is the disfigurement of the right side of his body and the partial impairment of the use of his right hand. There is no medical testimony that the burns he received had any permanent deleterious effect upon his health or will produce serious consequences in the future. Under these circumstances, the jury's award of $20,000 is obviously excessive and raises a presumption that it could not have been based upon a fair consideration of the facts relating to the injuries which respondent suffered.

Measuring the respondent's evidence by the rules which have been stated, the sum of $10,000 is the maximum amount which may be permitted to stand. However, in view of the conclusion that the verdict was proper in all respects except as to damages, there is no necessity for a retrial on the issues of negligence. (*Pretzer* v. *California Transit Co.,* 211 Cal. 202 [294 Pac. 382].) The appellant is entitled to a new trial upon the sole issue of damages unless within thirty days from the filing of the *remittitur* in the court below, the respondent shall remit from the judgment the sum of $10,000. If such remission be made, then the judgment shall stand affirmed with neither side to recover costs of appeal; otherwise, it shall stand reversed and the cause remanded for trial upon the issue of damages.

Langdon, J., Curtis, J., Seawell, J., Waste, C. J., Houser, J., and Shenk, J., concurred.

Rehearing denied.