[S. F. No. 17945.   In Bank.   Aug. 31, 1949.]

BENJAMIN BLUMBERG et al., Appellants, v. M. & T. INCORPORATED (a Corporation) et al., Respondents.

Ernest I. Spiegl for Appellants.

Cooley, Crowley, Gaither & Dana, Cooley, Crowley & Gaither and Louis V. Crowley for Respondents.

EDMONDS, J.—Benjamin and Charlotte Blumberg sued to recover damages for personal injuries which she assertedly sustained when she fell in the lobby of a downtown office building in San Francisco. Their appeal from an adverse judgment challenges the ruling of the trial court granting the property owner's motion for a nonsuit.

According to the settled statement, about two hours after a dinner with Mr. and Mrs. Melvin Isaacs, the Blumbergs accompanied their friends to see Mr. Isaacs' office. The accident occurred after they returned to the ground floor. Mrs. Blumberg testified in part: ''. . . I remember taking a few steps and then all of a sudden . . . there was a feeling as though something held me down and right with that simultaneously my head was hitting this terrazzo floor and someone called out. It was all in one, this blow here; I just remember going down and cracking my head.'' When asked whether there was ''any sensation as if your foot had slipped?'' she replied: ''Oh, no.'' She gave the same answer to the question: ''Was there any sensation of your ankle having turned?'' In further explanation of her injuries, she said that she fell on a large mat in front of the elevators while walking with head erect, watching her way. As described by her, she fell toward the lobby door, with her head striking the bare floor and her legs on the mat. After the accident, her right stocking bore the imprint of the mat.

Mrs. Isaacs testified that, after the two couples descended in the elevator, the men preceded their wives across the lobby. Mrs. Blumberg followed them. Mrs. Isaacs, walking slightly behind the three, saw Mrs. Blumberg fall ''. . . absolutely straight as though she had had something hold her or pull her . . . She fell in one straight piece . . . her knees didn't go down first, her arms didn't go down first. . . .'' Mrs. Isaacs added that, immediately prior to the accident, Mrs. Blumberg's manner of walking was normal. She was not running, and the witness did not see her slip.

The record shows that the mat mentioned in the evidence was constructed of small pieces or strips of rubber or similar material held together in a row, running in both directions at right angles, with open spaces of varying sizes up to, but not greater than, 1-1/16th of an inch by 5/8ths of an inch. A witness familiar with the shoe business testified that the left shoe worn by Mrs. Blumberg on the night of the accident was made with a medium spike heel of the type worn on the street by about 60 per cent of the women in San Francisco. The usual measurement across the base of heels of this type, he added, is from 11 to 12/16ths of an inch. However, Mrs. Blumberg's heel had been shortened on a trimmer and measured 14/16ths of an inch across the front of the base and 13/16ths of an inch from front to rear. Upon cross-examination, he declared that a small cap at the base of the heel had been put on by a repair shop; that the shoe was a regular street shoe rather than an evening shoe; and that there is no such thing as a standard heel.

As justifying a reversal of the judgment on the ground that this evidence would support a verdict and judgment in their favor, the Blumbergs contend that the evidence is sufficient to warrant a finding that Mrs. Blumberg's left heel became wedged in one of the interstices in the mat. Their theory is that, although her heel was too large to enter any one of the spaces squarely, it must have entered and become wedged in one of the 1-1/16th of an inch by 5/8ths of an inch spaces when brought down at an angle with toe raised, in the manner common to women walking in high-heeled shoes. The evidence also indicates, they argue, that the accident could not have happened in any other manner, since she did not slip, trip or turn her ankle, and there was no foreign matter on the mat. As the basis of liability, it is said that the size of the openings was inherently dangerous for the San Francisco women who wear such heels for street use, and the property owner knew, or should have known, of such danger. Finally, it is said, the Blumbergs were invitees, and the property owner owed a duty to maintain the lobby in a safe condition or to give warning of any danger.

As justifying the ruling on the motion, the respondent takes the position that the evidence offered by the Blumbergs is insufficient to support a verdict for them because (1) it does not show that the mat was defective; nor (2) that it was dangerously constructed, or different from mats generally used in office building lobbies; nor (3) that the property

owner knew the relation between the sizes of the heel of a woman's shoe and the openings in the mat; nor (4) that the owner knew, or had any reason to believe, that there was danger in maintaining the mat; nor (5) that Mrs. Blumberg's heel actually caught in an opening in the mat. Finally, they insist, if the mat was dangerous, its nature was obvious to Mrs. Blumberg, who was therefore warned of its condition.

A trial court is justified in granting a motion for nonsuit ". . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190]; see, also, *Hale* v. *Depaoli,* 33 Cal.2d 228, 229 [201 P.2d 1]; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 650 [122 P.2d 576]; *Estate of Lances,* 216 Cal. 397, 401 [14 P.2d 768].) As stated in *Estate of Lances, supra,* page 400, "Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury."

As invitees of Mr. and Mrs. Isaacs, tenants of the building, the Blumbergs were business visitors and as to them the property owner was obliged to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn them of danger. The duty was not limited to conditions actually known by the owner to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care. (*Mondine* v. *Sarlin,* 11 Cal.2d 593, 597 [81 P.2d 903]; *Dobbie* v. *Pacific Gas & Electric Co.,* 95 Cal.App. 781, 790 [273 P. 630].)

The uncontradicted testimony clearly shows that the floor mat upon which Mrs. Blumberg fell had openings of sufficient size to allow a portion of the heel of her shoe to slip into one of them, at least at an angle. There is also evidence that the shoes of a large number of the women in San Francisco have heels of the size worn by her. Accordingly, the jury reasonably could have inferred that her left heel became wedged in the mat in precisely that manner, causing her to fall.

Reasonable inquiry and inspection would have informed the property owner that it was maintaining in the lobby a mat with openings likely to retain and hold the heel of a shoe such as is customarily worn by a large number of the women in San Francisco. Moreover, whether the nature of the mat was obvious to Mrs. Blumberg was a question of fact for the determination of the jury. ██ The claim that the mat in question was widely used is no legal excuse for the maintenance of a dangerous condition. The fact that a negligent practice is general does not transform it into reasonable care.

The judgment is reversed.

Gibson, C. J., Carter, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

A possessor of land is not an insurer of the safety of his business guests, nor is he liable for harm resulting from a condition from which no unreasonable risk was to be anticipated. He "is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them (*Hinds* v. *Wheadon*, 19 Cal.2d 458, 460 [121 P.2d 724] ; *Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933] ; *Chapman* v. *Title Insurance & Trust Co.*, 68 Cal.App.2d 745, 751 [158 P.2d 42] ; *Jones* v. *Bridges*, 38 Cal.App.2d 341, 345 [101 P.2d 91] ), and

(b) has no reason to believe that they will discover the condition or realize the risk involved therein (*Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 512-513 [50 P.2d 801] ; *Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 P. 793] ; *Royal Insurance Co.* v. *Mazzei*, 50 Cal.App.2d 549, 552-553 [123 P.2d 586] ), and

(c) invites or permits them to enter or remain upon the land without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to give a warning adequate to enable them to avoid the harm." (2 Restatement, Torts, § 343, pp. 938-939.) It was therefore incumbent on plaintiffs to present evidence from which reasonable men could conclude: (1) that defendants should have realized that the mat involved an unreasonable risk to business visitors; and (2) that defendants

had no reason to believe such visitors would realize the risk involved therein. In my opinion there was no evidence that would warrant either of these conclusions.

1. The evidence fails to show that the mat was in any way different from those in general use. (*Yearsley* v. *American Stores Co.*, 97 Pa.Super. 275, 277.) There was no evidence that other persons had slipped or fallen on that mat or similar mats, which might have given defendants reason to believe that the continued use of the mat would be dangerous. The majority opinion states that "The fact that a negligent practice is general does not transform it into reasonable care." It is equally true, however, that a practice that has been generally followed without incident is not transformed into negligence merely by the occurrence of a single accident not reasonably foreseeable. Plaintiffs rely upon the testimony of a witness familiar with the shoe business that plaintiff was wearing the type of heel that 60 per cent of the women of San Francisco wear for street use. Even if it is assumed that defendants were aware of this fact, it does not follow that they should have concluded therefrom that the mat was unsafe. There is no negligence if harm could not reasonably be foreseen. "The standard must be one of conduct, not of consequences." (Prosser, Torts, § 35, p. 220.) Any accident raises the question whether it could reasonably be foreseen, but one cannot conclude that it could have been foreseen merely because it occurred; negligence cannot be inferred by looking backward "with the wisdom born of the event." (Cardozo, C. J., in *Greene* v. *Sibley, Lindsay & Curr Co.*, 257 N.Y. 190, 192 [177 N.E. 416] ; *Dickson* v. *Emporium Mercantile Co., Inc.*, 193 Minn. 629, 631 [259 N.W. 375].)

It is plaintiffs' theory that the heel of Mrs. Blumberg's shoe became wedged in one of the interstices of defendants' mat after being inserted at an angle with the toe pointed upward. They contend that "the accident could not have happened in any other manner." Diagram B illustrates the outline of Mrs. Blumberg's shoe with the heel in what plaintiffs term "the situation which must have occurred at the moment of Mrs. Blumberg's injury." They contend that as her toe descended and her foot rolled forward, the back of her heel, describing an arc, wedged against the latitudinal strip of the interstice, causing her to fall. Even if it is assumed that the accident occurred according to plaintiffs' theory, can it reasonably be said that it was within the normal

scope of prevision of a possessor of land? A comparison of the sizes of the base of Mrs. Blumberg's heel and the largest space in the mat demonstrates the unlikelihood of a heel's

DIAGRAM A

wedging in the manner alleged. Had plaintiff stepped straight down on the mat, it would admittedly have been impossible for her heel to enter the interstice. The accident could only have occurred, by plaintiffs' own admission, because Mrs. Blumberg crossed the mat at a right angle to the long side of the interstice and the heel fell well into it. It is clear from Diagram B that plaintiff's toe must have been raised at a relatively high angle and at about the only angle that could prevent the heel from swinging free as plaintiff stepped forward. The jury might have inferred that these unusual circumstances conspired to cause Mrs. Blumberg to fall. But the duty to anticipate such a possibility, which became apparent only by hindsight, cannot be said to be part of the requirement of ordinary care. (*Baran* v. *Reading Iron Co.*, 202 Pa. 274 [51 A. 979]; *Austin* v. *Eastern Mass. St. Ry. Co.*, 269 Mass. 420 [169 N.E. 484]; see, also, *Whiting* v. *City of National City*, 9 Cal.2d 163, 165, 166 [69 P.2d 990]; *Baddeley* v. *Shea*, 114 Cal. 1, 7 [45 P. 990, 55 Am.St.Rep. 56, 33 L.R.A. 747].)

2. Even if reasonable men could differ as to whether the mat created an unreasonable risk to business visitors, the judgment should be affirmed Any danger inherent in the mat was as apparent to Mrs. Blumberg as to defendants, and a reasonable jury could not conclude that defendants had reason to believe that she would not realize the risk involved in walking across the mat with the type of heels she was wearing. One ordinarily looks where one is going, and the interstices of the mat were clearly visible. There was nothing unusual about them in size or design, nothing defective, to trip the average walker. Actually there was no danger in the mat lying in wait for Mrs. Blumberg. The danger to be

sole of plaintiff's shoe

surface of defendants' mat

DIAGRAM B.

anticipated was from the spiked heels, not from the mat. Those who walk on spiked heels court danger. That is their privilege, but it is also their responsibility to consider the consequences, to be aware of the peculiarities of the shoes they wear. Mrs. Blumberg not only could see everything that defendants could by looking at the mat, over which she had walked when she entered the building, but she knew as they did not the type of heel she was wearing. An "owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." (*Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 P. 793]; *Royal Insurance Co.* v. *Mazzei*, 50 Cal.App.2d 549, 552-553 [123 P.2d 586]; see, also, *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 512-513 [50 P.2d 801].)

Shenk, J., and Schauer, J., concurred.