[L. A. No. 14898. In Bank.—December 6, 1935.]

OSCAR P. CALDWELL, Appellant, v. LEONORE TAYLOR et al., Respondents.

Daniel A. Knapp for Appellant.

Richard A. Dunnigan and Harold E. Thomas for Respondents.

THE COURT.—This is a suit in equity by Oscar P. Caldwell, only son of the deceased, Perry Moore Caldwell, seeking to have the defendant, a beneficiary named in the will as Leonore Fisher Caldwell, declared an involuntary trustee of the property devised to her upon the ground that the will was procured by her fraud and undue influence. The Bank of America Trust and Savings Association (successor in interest to the Bank of Italy National Trust and Savings Association) is likewise sought to be charged as constructive trustee in its capacity as executor under the will of Perry Moore Caldwell.

The plaintiff seeks the aid of equity in this independent suit upon the ground that the probate of the will was procured by the fraud of the defendant Taylor in that, by concealment of the facts, she prevented the plaintiff from making a timely contest of the will. The legal questions relevant to the claim of fraud which prevented the contest of the will were passed upon by this court upon appeal from an order sustaining demurrers to the complaint and it was held that a case had been alleged sufficient for the interposition of equity. (*Caldwell* v. *Taylor*, 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194].) Upon the trial of the case the court found for the plaintiff upon the issue of fraud which prevented him from seeking a timely remedy in the probate court but also found that the will was not procured by the fraud or undue influence of Leonore Taylor. A reversal of the judgment for the defendant is sought upon the ground that the findings against undue influence and fraud in the procurement of the will are unsupported by the evidence.

The probated will bears the date July 9, 1929. By it Perry Moore Caldwell left to his "wife," Leonore Fisher Caldwell, $4,500 in cash and one-half the income of a $25,000 trust fund for life, which upon her death was to be paid to the plaintiff quarterly until he reached the age of 45, also upon her death the trust as to one-half of the trust fund was to cease and half the principal to be paid to the plaintiff. Upon plaintiff's reaching the age of 45 the entire trust was to terminate and the entire principal was to go to him. One-half the residue was devised to the plaintiff absolutely and the remaining half of the residue was left in trust for him until he reached the age of 45. The estate was valued at $60,000 at the time of death, but the court found that its present value, or value at the time of trial, had diminished to $29,500, the practical ef-

fect being to leave plaintiff nothing but the expectancy upon the death of the defendant, whose life expectancy was about the same as his own.

Perry Moore Caldwell died in a hospital of exhaustion caused by a cancer on August 3, 1929. On May 29, 1929, he married the plaintiff in Tia Juana, Mexico. Defendant was admittedly the wife of one Carl L. Taylor, from whom she had an interlocutory decree of divorce at the time of her purported marriage to Caldwell. Defendant also admits to a long police record of convictions for lewdness, vagrancy, prostitution and similar offenses. Her contention is, however, that Caldwell knew all these matters and was determined to marry her in spite of her past history and existing marriage to Taylor. At that time Caldwell was suffering from a cancer of the larynx, for which he had already undergone an operation in February, 1929, and could not speak above a whisper. After the marriage defendant took decedent to an apartment in Los Angeles, from which he was taken to a hospital, following a hemorrhage, on June 9, 1929. Caldwell had three additional operations and repeated hemorrhages and, from the time he was taken to the hospital, was regularly given opiates. He could communicate only by signs and by writing notes and was extremely weak. Defendant was in constant attendance upon him. She wrote plaintiff in Portland about June 16th, telling him of his father's condition. The plaintiff arrived in Los Angeles about June 20th. He says that it was next to impossible to see his father without the defendant being present and that, on being warned by the doctor, he attempted to investigate her but was unsuccessful. On June 10th, Harold E. Thomas, an attorney employed by the Bank of Italy, was notified by telephone by the bank to go to the hospital to draw a will for Caldwell. On June 11th Thomas had a conversation with decedent, who made his wishes known by means of notes and by nodding or shaking his head in response to questions put by Thomas, whereupon, at the bedside of decedent, in the absence of defendant, Thomas wrote out a will in longhand and it was executed by the decedent (by placing his signature on each of the three pages) and witnessed by Thomas and a nurse. This will was identical with the typewritten will of July 9, 1929, which was probated. Thomas' story is that, some time between June 27th and July 9th, the defendant came to his office declaring that the plaintiff had

arrived and was determined to contest the will; that she also told Thomas that Caldwell knew the facts of her past history. Thomas then prepared a statement to this effect for decedent to sign, decedent read it and signed it and returned it to him. The later execution of the probated will was Thomas' own idea, he and his wife signing as witnesses after he had first read the will to the decedent and questioned him as to his continuing desire to dispose of his property in that way. Defendant was not present at its execution.

Damon, attorney for defendant over a period of years, testified that Caldwell came with the defendant to his office to arrange for procuring her divorce from Taylor, that he, Damon, warned him that he could not marry her while she had only an interlocutory decree, but that Caldwell refused to listen to him and that Caldwell at this time further said he was aware of her police record.

The appellant relies upon the inference to be drawn from the circumstances, the previously expressed intention of decedent to leave the entire estate to plaintiff, his weak and enfeebled condition, the clouded condition of his mind due to the continual administration of drugs, the character record, opportunity to and obvious interest of defendant in procuring such a will and the improbability that a man of the age, character, intelligence and education of the decedent would enter a bigamous marriage with the defendant had he had full knowledge of her history and existing marriage. Opposed to this is the positive testimony of Damon and Thomas of decedent's knowledge of defendant's character and married status and that both the marriage and the making of the will were voluntary and deliberate acts of the decedent.

There are also in evidence several disconnected writings of the decedent, said to have been made by him in response to questions and statements made to him by Thomas or his son, and samples of his handwriting and signatures which would indicate, at the least, that he was not always able to write without assistance. These writings can be construed as supporting the plaintiff's hypothesis but do not preclude all possibility of the truth of defendant's story, while some of them even lend it support. The evidence is extremely conflicting and a reading of the record discloses that contrary findings would probably be held to be supported. In this state of the record the issue turns almost entirely upon the credence given

the testimony of Damon and Thomas. Not only is it clear from the findings that they were believed, but the trial court so states in the memorandum for decision which is contained in the record brought up. The credibility of witnesses and the weight to be accorded their testimony is a matter for the trial court and cannot be gone into on appeal.

The judgment is affirmed.

Rehearing denied.