[Civ. No. 5754.   Third Appellate District.—September 29, 1937.]

C. I. T. CORPORATION (a Corporation), Respondent, v. JOHN D. LAWSON, Appellant.

Huston, Huston & Huston for Appellant.

Bradford, Cross & Prior for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant upon two assigned claims on account of merchandise alleged to have been sold by one Andrew Gray, and delivered to the defendant. From this judgment the defendant appeals.

The complaint states two causes of action. The first cause of action alleged that on the 16th day of February, 1933, the plaintiff in due and regular course of business and for value, purchased the conditional sales contract marked ''Exhibit A'' and annexed to the complaint, setting forth the merchandise sold and delivered by the said Andrew Gray to the defendant, and that upon said contract there is and was due at the time of the filing of the complaint the sum of $1336.08. Attorney's fees were also asked as to said first cause of action. The second cause, after setting forth the assignment of the contract, etc., alleged the sale of merchandise by the said Andrew Gray and delivered to the defendant, and upon which contract there was due the purchase price of $1516.32. The court awarded judgment in favor of the plaintiff in the sum of $3,202.40.

By way of defense the defendant in his answer alleged an alteration of the contracts, and that the contracts sued upon were not the contracts signed by him, and that the merchandise described in the complaint differed from the merchandise described in the contracts signed by him, and therefore the defendant was not liable.

It does not appear from the transcript that the defendant ever paid, or offered to pay, any portion of the purchase price of the merchandise that was received by him, nor does it appear from the transcript that the value of the merchandise received by the defendant was not equal to that alleged in the complaint.

The record shows that the merchandise involved relates to X-ray equipment. This equipment was sold through Andrew Gray (mentioned in the transcript as ''Doctor Gray''). It appears that Doctor Gray was an agent for the sale of X-ray equipment, and had entered into and negotiated an agreement with the defendant for the sale and delivery to the defendant of the X-ray equipment mentioned in the transcript. A number of contracts are mentioned in the transcript, but only two of them are involved in this action.

A careful reading of the briefs and of the portions of the transcript referred to therein, exhibits the fact that there is presented for our consideration only a conflict of evidence. The law is well settled that where there is a conflict of evidence, if there is any substantial evidence supporting the

findings of the trial court, appellate courts are bound by such findings. In the instant case, while some of the testimony introduced on the part of the defendant would indicate that there had been some change in the list of merchandise ordered by the defendant after the signing of the order, on the other hand, we find that there is testimony indicating that the defendant is mistaken in this particular. It is needless to say that it is the province of the trial court, who heard the witnesses, to resolve these matters and determine the truth thereof.

Just prior to the signing of the contracts involved in this action the defendant was a practicing physician and was in charge of a clinic located at Woodland, California, and had, before entering into the contracts here mentioned, purchased considerable X-ray equipment from Doctor Gray, to be used at the clinic just mentioned. In the latter part of 1932, the defendant concluded to enter private practice and open offices in the city of Sacramento. It appears that one Doctor Woolford, whose offices were located in the California State Life building, was desirous of selling his practice, together with his X-ray equipment. On February 8, 1933, Doctor Woolford gave the defendant a ten-day option to purchase his business and equipment for the sum of $6,385.34. This equipment had been purchased by Doctor Woolford from Newton E. Wise under a conditional contract, which contract was assigned to the Peoples Finance & Thrift Company of Sacramento. The plaintiff produced and introduced two contracts executed by the defendant, one dated February 8, 1933, the other dated February 16, 1933. The contracts appear to be complete in every way. At the end of each contract is a certificate of installation signed by the defendant, and on the back of each contract, an assignment executed by Andrew Gray to the plaintiff. The certificates of installation just referred to recite that the merchandise mentioned in the contracts has been received and installed in the offices of the defendant. On one of the contracts it appears that the list of merchandise was set forth upon slips of paper attached to the original contract by clips. The defendant claims that the contract dated February 8, 1933, contains two items which were not included in the contract signed by him. As to the contract dated February 16, 1933, it is the defendant's claim

that the list of items attached thereto is not the list which was attached to the contract; that the defendant made a copy of the list which was introduced by him marked "Exhibit B", showing a claimed difference of $180.32. The contract calls for twenty-four monthly payments in the sum of $63.18 each. By multiplying the amount of the monthly payments by twenty-four, we find the total charge to be $1516.32, only a difference of eight cents, which furnished the basis for the trial court to come to the conclusion that all of the items mentioned as merchandise in the contract, including the charges set forth therein, were just exactly as they were upon the contract when it was signed by the defendant. The monthly payments and the other items were not listed with the merchandise mentioned therein, and exhibits very clearly that the value of the merchandise, financing, charges, etc., were all included and figured out as stated, providing for twenty-four monthly payments in the exact sum mentioned. The difference of eight cents is so negligible that it must have been discarded by the one who made the calculations.

The testimony of the defendant was such as to justify the court in concluding that the defendant's copies of contracts made by him were not accurate or complete, as some of the exhibits were carbon copies of the clipped lists as shown by the following testimony:

"Q. Now, at that time did you retain a list or copy of the list that was attached to that contract? A. I did, yes. Q. A carbon copy of it? A. The listing as—it was not a carbon copy. The listings were all made and the papers all drawn up in Dr. Gray's office. That peculiar type is all on Dr. Gray's typewriter. I, however, made a listing, copied it from there, from the contract, at the time that I returned, from the contract for negotiation. I retained a listing which I destroyed on the return of my copy of the contract. Q. You retained a listing which you destroyed, you say? A. As soon as I received my copy back from Gray. Then I destroyed the copy that I had made at the time the contract was executed. Q. Oh, the copy that you had made? A. Yes; after I compared it with the listing, I destroyed it. Q. Then this copy here is not the copy at the time you signed the contract? A. That is a copy made on Mr. Gray's typewriter, yes. It is a duplicate of the original, or is the original, or a dupli-

cate.  Q. Or a duplicate of it?  A. Yes.  Q. Well, now, have you the—how many contracts did you sign?  Did you sign them in triplicate?  A. They were signed in duplicate, as I remember.  I couldn't be positive.  They were triplicate copies, but I don't believe the triplicate was ever signed.''

The transcript shows that the court made the calculations with regard to the twenty-four monthly payments and ascertained the amount thereof to be within eight cents of the value of the merchandise, and all of the costs and expenses set forth in the contract.

The record shows that Doctor Gray became involved in financial difficulties and disappeared and was not available as a witness at the trial of this cause.

As to the other contract and the one where no clips were used, it is shown that the defendant certified as to the installation thereof, and when two representatives of the plaintiff called at his office to inspect the installation, made no claim whatever that the contracts had been changed, but did claim that he had not received all of the merchandise.  This circumstance was something which the trial court had a right to consider in coming to the conclusion as to whether the claim of the defendant was or was not well founded that the contracts had been changed after his signature had been attached thereto.

In so far as the Woolford deal is concerned, it seems to us immaterial to consider the same, for whether the defendant did or did not receive full credit in relation to such equipment, is wholly immaterial as to the right of the plaintiff to prevail in this action.

Another factor which the trial court had to consider was the fact that the defendant produced no original copies of the contract, but only copies made by himself, and the matters which we have set forth herein justify the trial court in concluding that the defendant's copies were inaccurate.

In judging of the credibility of the defendant, and of the weight to be given to his testimony, the trial court had a right to, and doubtless did, take into consideration the fact that the defendant had used a portion of the merchandise for a number of months, and had not paid any of the purchase price of the equipment which he admitted he received, but

finally attempted to escape payment for any portion thereof on the alleged grounds of changes in the contract.

What we have set forth we deem sufficient to justify the conclusion of the trial court and sustain the judgment.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 26, 1937.