[Civ. No. 13764.   Second Dist., Div. Two.   Oct. 28, 1942.]

CARL DE LA MOTTE et al., Respondents, v. LYLE W. RUCKER, Appellant.

Lyle W. Rucker in pro. per., for Appellant.

Laurence B. Martin and Samuel Reisman for Respondents.

MOORE, P. J.—Defendant appeals from a judgment in favor of each of the plaintiffs who are husband and wife, in the aggregate amount of $4,450. The action arose out of a collision of the automobiles of the plaintiffs and defendant. The husband only will herein be referred to as the plaintiff. Defendant grounds his appeal upon the claim that the record shows no negligence on his part, but that on the contrary it establishes the contributory negligence of the plaintiff. The case was tried before a judge pro tempore without a jury.

The accident occurred on the 27th of August, 1940, about 6:35 o'clock p. m. on the Highway 101, 12 miles north of Oceanside. At the locus of the collision, the highway runs north and south; is level for several hundred yards. The paved portion is marked off into three lanes, each of which is 10 feet in width. The two outer lanes are constructed of concrete; the center lane, which is used for passing only, is made of black asphalt. On each side of the pavement is an oiled shoulder eight feet wide. Outside of each shoulder is a dirt apron of about 45 feet in width. The 27th of August was a holiday, and many people had congregated to witness the races at Del Mar. Following that event, an extra stream of traffic poured onto the highway in addition to the normal traffic flow. Plaintiff with his wife had attended the races, and was driving his Chevrolet northwards. Defendant perceived that the traffic was unusually heavy as he searched for a wide open space in the highway where he might effect

a turn across the boulevard in order to direct his travel northward. He knew that he had to deal with a continuous stream of automobiles returning from the south. In search of a place for turning, defendant had stopped on the westerly oil shoulder with his lights burning and his car headed southward. When plaintiff reached a point at which he was 200 feet south of defendant, a continuous procession of automobiles followed him, each about 75 or 100 feet behind the other, all going at the same speed, except that of the witness Decker who attempted to pass the procession. When defendant first saw the Chevrolet approaching from the south, the latter car was about 150 or 200 feet distant. Without estimating its speed, without giving a signal for entering the boulevard or for making a "U" turn, and without blowing his horn defendant proceeded to describe the arc across the boulevard. After starting he did not look to see plaintiff's course. His drive across was continuous. Upon beholding defendant's car describing an arc across the highway, plaintiff had no idea of its speed. But by the time the Chevrolet reached a point 100 feet from the De Soto, plaintiff became conscious of his peril; applied his brakes intermittently, thinking defendant would yield. Then, as if in a frenzy to avoid the De Soto, plaintiff gunned his motor in order to swerve sharply to the right of defendant's car. Feeling that such effort would fail, when about 50 feet away, he applied his brakes solidly. He skidded 41 feet on the pavement, and 50 feet on the shoulder to the point of impact on the dirt apron where the Chevrolet turned over two and a half times.

Defendant contends that such behavior of plaintiff proves that he had ample time to ponder over the matter. Such is an erroneous conclusion. Plaintiff was necessarily confused if not terrified by the emergency. Moreover, the time consumed in travelling the 50 feet before applying his brakes solidly was no longer than a flash—no time to ponder. The testimony as to the speed of the De Soto, as it crossed the pavement differed. However, by the time it had reached the easterly oiled shoulder and headed northward, defendant had shifted to second gear, apparently to accelerate his speed. While the testimony as to the speed of plaintiff as he approached the locus of the impact varies, it was established by Mr. Decker, a disinterested witness, to have been about 45 miles per hour. When Decker attempted to pass the north-bound procession, he saw the De Soto 800 feet away,

standing in its position on the west shoulder. It appeared at first to be the driver's intention to continue southerly. Although he did not watch the De Soto complete its "U" turn, he observed that its speed across the pavement was rapid. Following the impact, defendant stated to Officer Piper that at the time he started across the pavement, the Chevrolet was 150 or 200 feet to the south of him.

Under the situation as above described, plaintiff contends that he was confronted with an unexpected peril and that he acted in a reasonably prudent manner when he applied his brakes and swerved to the right in the effort to avoid a collision; that the impact resulted solely by reason of defendant's suddenly turning his De Soto in a "U" turn across the pavement into the midst of heavy traffic. On the other hand, defendant contends that not only did plaintiff's negligence contribute to cause the collision but that by reason of his excessive speed plaintiff was solely responsible for his misfortunes. Defendant's observations as to the unreliability of plaintiff's conflicting testimony will not receive further consideration for the reason that the trial court disposed of such conflicts by making its own choice of his divers declarations as was done with respect to defendant's contrary declarations as to his distance when he first saw plaintiff.

In viewing the evidence in support of a finding, it is incumbent upon the appellate court to accept all evidence and the inferences arising therefrom which tend to establish the correctness of the finding; also, it is required to consider the evidence in its most favorable aspect toward the prevailing party; it must accept the evidence in support of the finding as true and resolve every substantial conflict as favorable to the decision of the court (2 Cal. Jur. § 515, p. 879) whatever may be the opinion of appellate court as to the weight of evidence. Rules followed for the guidance of juries do not control reviewing courts. If there is material credible evidence in support of the findings of the trial court, the appellate court is without power to disturb them. (*Albaugh* v. *Mt. Shasta Power Corp.*, 9 Cal.2d 751, 773 [73 P.2d 217].) All conflicts here must be resolved in favor of respondent and all legitimate, reasonable inferences must be drawn in support of the findings below. The power of the appellate court "begins and ends with a determination as to whether there is any substantial evidence" in support of the judgment. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427,

429 [45 P.2d 183].) Judgment of the trial court will not be upset because a preponderance is on the side of the losing party, but only where there is a total absence of competent evidence. (*Shapiro* v. *Shapiro*, 127 Cal.App. 20 [14 P.2d 1058].) The trial judge has the sole right to believe or reject the testimony of witnesses. Although contrary findings might have been upheld, the judgment for that reason will not be disturbed. (*Caldwell* v. *Taylor*, 4 Cal.2d 686 [52 P.2d 213]; *Dellarowe* v. *Kirchner*, 99 Cal.App. 599 [279 P. 210]; *C. I. T. Corp.* v. *Lawson*, 23 Cal.App.2d 4 [72 P.2d 210].)

If the Chevrolet was proceeding at a speed of 40 to 45 miles per hour, as found from the testimony there was no negligence on the part of plaintiff with respect to his speed. Defendant told Officer Piper, immediately following the accident, that plaintiff was 150 feet to the south as defendant started across the highway and that the north-bound traffic was "exceedingly heavy." After observing the Chevrolet approaching him, defendant did not look again to observe the distance of the Chevrolet just as he started across the pavement and he did not look thereafter. Neither did he have a "definite opinion" as to its speed while it was approaching. He did not pause but his travel across the pavement was continuous. Moreover, plaintiff testified that, when he was 100 feet south of defendant while driving at 45 miles per hour, defendant quickly proceeded across the pavement and turned northerly in front of plaintiff; that he was not certain that defendant intended to continue across until he was within 55 feet of the De Soto; that he then applied his brakes and strove to avoid the collision.

Under such testimony it was incumbent upon the trial court to determine whether defendant was cautious in crossing the boulevard or negligent and, if negligent, whether his negligence was the sole proximate cause of the collision. The court concluded that under the circumstances it was defendant's duty to maintain his station on the west side of the highway until the automobiles approaching him from the south should have passed on and have made it reasonably safe for him to cross the highway. Such decision finds substantial support in the evidence.

"No person shall start a vehicle stopped, standing or parked on a highway unless and until such movement can be made with reasonable safety." (§ 543, Veh. Code.) Moreover, the evidence established it as a fact that defendant undertook to cross the highway without giving a signal. "No

person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after giving appropriate signal in the manner provided herein. . . ." (Veh. Code, § 544.) Signals are to be given by the arm from the left side of vehicle (Veh. Code, § 546) and the driver must give an audible warning with his horn "when reasonably necessary to insure safe operation." (Veh. Code, § 671.) In view of the defendant's own testimony, as to the distance of the Chevrolet the first time he saw it, and its travelling speed, defendant cannot successfully contend that it was reasonably safe for him to undertake to cross the highway from his standing position on the westerly side, much more unreasonable would it have been for him to attempt the crossing if the Chevrolet had been proceeding at a speed of 60 miles per hour as contended by defendant.

Defendant apparently conceived that because he corrected his statement to witness Piper as to the distance of plaintiff when first seen by defendant, this corrected distance should have been the basis of the court's finding. But it was the privilege of the court in the exercise of a judicial discretion to select any statement or testimony of defendant as the basis of a finding against him. However, the labors of the court were lessened by the testimony of plaintiff that defendant did not begin his turn until the Chevrolet was 100 feet south of the De Soto.

From a consideration of only the statements and testimony of the defendant the trial court might reasonably have concluded that the defendant could not have attempted his crossing with reasonable safety to himself or to the motorists approaching from the south. Especially was the court's problem made easy of solution by the testimony of the witness Decker who made it clear that the heavy traffic made it perilous for a driver to attempt a "U" turn there. All measures for his safety required of defendant were omitted by him. (Veh. Code, §§ 544, 546, 671.) ▉ Where motorist A has knowledge of the approach of motorist B on a public highway within a distance which makes it impossible for B to avoid a collision, A's turn directly in front of B's oncoming automobile constitutes the sole cause of the collision. (*Sinclair* v. *Harp*, 18 Cal.App.2d 167 [63 P.2d 876].) ▉ If the court believed from all the evidence that when plaintiff reached a point 100 feet away while driving at a reasonable speed toward defendant and that defendant suddenly left his

position of safety and arched across the highway into a place of peril without first giving a warning of his intention, we cannot say that the evidence does not warrant the court's finding that defendant alone was responsible. (*Dwelly v. McReynolds*, 6 Cal.2d 128 [56 P.2d 1232].) If a motorist at an intersection is bound to exercise "great care" to avoid colliding with vehicles across whose paths he must travel over a highway (*Donat* v. Dillon, 192 Cal. 426, 429 [221 P. 193]) then how much greater care is to be exercised by one who is not at an intersection, but who, none the less, moves onto the highway. Before starting to turn he must first see "that there is sufficient space for such movement to be made in safety." That defendant, at the scene of his "U" turn, faced a "very, very heavy stream of traffic" proceeding northerly, is his own confession. That each car in its line, including that of plaintiff, maintained a reasonable speed is a fact fairly deducible from the evidence.

In his very excellent brief defendant does not stress any care on his own part, but generously emphasizes the negligence of the plaintiff. He contends:

(1) That the excessive speed of plaintiff is established by the damage to the Chevrolet and the 91 feet of skid by plaintiff and his overturn after the impact;

(2) That if plaintiff had had his Chevrolet under control he could have stopped it behind the De Soto;

(3) That no signal was necessary to warn plaintiff of defendant's intention to cross the pavement. We have already disposed of defendant's failure to give a signal of his intention to cross the pavement.

Defendant argues that it is unreasonable to believe that plaintiff could have performed his skid and overturn two and one-half times while going at only 45 miles per hour. He was keeping his place in a procession that traveled about 45 miles per hour. The fact that he skidded 41 feet on the pavement and 50 feet on the shoulder is not in itself conclusive of his speed for the reason that 50 feet of the 91 feet of the skid was on the shoulder.

As to the control of his car by plaintiff, he testified that when he first observed defendant, the latter was 200 feet to the north, headed south standing on the extreme west side of the west oiled shoulder; that suddenly, without a signal, defendant started his movement across the pavement when plaintiff was about 100 feet away; that as he braked the

Chevrolet he swerved sharply to the right to go round defendant and to get off the highway. In truth, so wide was the sweep of defendant that in swerving to avoid him plaintiff finally struck the DeSoto on the dirt apron.

In his final brief appellant takes umbrage at the language used by respondent in describing his drive across the boulevard as a "U" turn. Not only does the testimony of the witnesses prove a "U" turn by appellant, but exhibit 1, a chart prepared by Officer Piper, graphically portrays an acute arc embracing the pavement and portions of the shoulders. It further emphasizes the negligence of appellant in that he made a wide sweep across the highway, instead of "hugging" the center and leaving the easterly half of the road, for the use of the stream of approaching traffic as required in making a left-hand turn at an intersection. (§ 540, Veh. Code.)

Plaintiff having been confronted with his sudden peril, it was not unreasonable for the trial court to find that his conduct in the situation was that of a reasonably prudent person trying to avoid a collision. If; as viewed now, he might have been more successful in acting otherwise than he did, such failure so to act is not proof of negligence because it did not turn out to be the wisest possible course open to him. In every such emergency it is a question for the trier of fact to determine whether the person acted with reasonable care under all the circumstances. In view of the finding and the evidence we cannot say that the plaintiff was negligent in the course he pursued. He had less than a second to consider his dilemma. (*Gamalia* v. *Badillo,* 53 Cal. App.2d 375, 378 [128 P.2d 184].)

The appeal from the order denying motion for a new trial is dismissed.

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1942.