[Civ. No. 3247.   Fourth Dist.   Nov. 30, 1943.]

LEONARD BETSCHART, Appellant, v. HENRY STEEL et al., Respondents.

C. E. Crowley for Appellant.

Stephen Tighe & C. W. Bowers for Respondents.

GRIFFIN, J.—Plaintiff and appellant, driver of a Ford coupé, brought this action against defendants and respondents Steel, the driver, and Hoke, the owner, of a Ford dump truck, for damages growing out of a collision in which the two vehicles were involved. Defendants deny negligence and set up a further defense of contributory negligence of plaintiff.

The collision occurred at the intersection of two public highways known as Pine Avenue and Chino-Corona Road, in San Bernardino County. Pine Avenue runs east and west. Chino-Corona Road runs approximately north and south.

Chino-Corona Road joins Pine Avenue, not exactly at right angles, but more from a southeasterly direction, at what might be rightfully described as *approximately* right angles. The trial court, in its findings, described it as a "T" intersection. The Chino-Corona Road is a state highway with a 30-foot pavement. As it approaches from the southeast it does not cross Pine Avenue but joins it at a slight angle, creating a rounding curve to the west of approximately 270 feet. From this intersection the state highway continues westerly on Pine Avenue, at which point the pavement on Pine Avenue is 30 feet wide. Leading from the east to the place where Pine Avenue joins the Chino-Corona Road, the paved highway is only 18 feet wide. The intersection, as thus formed, is entirely paved. Plaintiff was traveling north on Chino-Corona Road. Defendant Steel was traveling east on Pine Avenue. A collision occurred within the intersection. As they approached each other each had a clear and unobstructed view. The accident happened in the daytime and no other traffic was on the road.

Plaintiff testified that he was approaching the intersection on his right side of the highway at about 15 or 20 miles per hour; that as he was about 30 feet south of the south side of the prolongation of Pine Avenue defendant's truck approached to his left on Pine Avenue about 200 or 300 feet west of the intersection; that he continued on into the intersection in a northerly direction; that at all times he observed the approach of the truck; that he thought the truck was going to turn and go south on the Chino-Corona Road, but instead it came straight east on Pine Avenue. However, he testified that the truck driver gave no signal indicating that he was going to turn; that he (plaintiff) continued on northerly onto Pine Avenue with the intention of proceeding westerly thereon; that he realized that if the truck driver did not make the turn he, plaintiff, was going to "get hit"; that he thought the truck driver would make the turn but that he did not and that he found himself directly in the pathway of the oncoming truck. He then testified that the truck ran directly into the left side of his car as he was crossing Pine Avenue, and that the truck carried his car straight east on Pine Avenue about 60 feet.

There were no white lines indicating the center line of either of the highways and no white marks within the inter-

section. Plaintiff further testified that the truck driver was approaching him about in the middle of Pine Avenue. As a result of the collision plaintiff was injured and his car was damaged.

Defendant truck driver testified that he was approaching the intersection in his truck loaded with 9 tons of gravel; that about 100 yards west of the intersection and "at the intersection" he was traveling "to the right hand or south side of the highway" (Pine Avenue) going east about 25 to 30 miles per hour; that just as he entered the intersection he saw plaintiff's car "coming up the road" not proceeding in a westerly direction around the curve but going "straight north"; that he watched him all the time; that plaintiff was traveling about 25 to 30 miles per hour; that "it seemed like he was slowing up"; that he thought plaintiff was "going to come to a stop for me and I went on"; that just then plaintiff, instead of stopping, went on in front of him; that the front end of the truck collided with the left side of plaintiff's car on the south half of Pine Avenue and in the intersection; that the truck pushed plaintiff's car forward for a distance of about 60 feet; that he did not have room enough to turn to the right to avoid hitting him; that he backed the truck away from plaintiff's car; that he later saw plaintiff seated in his car and asked him how badly he was hurt; that plaintiff remarked that "he didn't know what he (plaintiff) meant by going in front of me (defendant truck driver) the way he did"; that he thought the truck driver was going to turn.

Other witnesses were called who corroborated the testimony of the truck driver. One was the occupant of a car which was traveling east a short distance behind the truck. He testified that the truck driver was going about 25 to 30 miles per hour at a point 100 feet west of the intersection; that the truck driver gave no signal indicating any intention of turning to his right around the curve; that when the truck arrived in the intersection the Ford coupé was "heading in front of the truck"; that the truck was proceeding on the south side of Pine Avenue about four feet north of the south edge thereof. The witness then designated a corresponding point on a diagram of the intersection which he claimed was the point of collision.

Defendant Hoke testified that he interviewed the plaintiff at the hospital and asked him how it happened; that plaintiff said "he didn't know, he just didn't see the truck"; that "I guess it was more my fault than it was the other fellow's." Plaintiff denied such a conversation but did admit on the

stand that although the truck driver did not make any signal, he thought he was going to "make the turn" and that he realized that if he didn't make the turn he (plaintiff) was going to get hit.

This is the substance of the evidence produced. From that evidence the trial court found that plaintiff's injuries and damages were not the result of any carelessness or negligence of defendants but that the sole cause of plaintiff's injuries and damages was plaintiff's own negligence. Judgment was entered accordingly.

Appellant first contends that the trial court erred in finding that the intersection here involved was what is commonly known as a "T" intersection. While the two highways did not intersect or join at perfect right angles, they did join each other at approximately right angles and form an intersection within the meaning of section 86 of the Vehicle Code.

Appellant next contends that the evidence does not establish negligence, as found by the court, on the part of the plaintiff. Considering that question the evidence, though conflicting, shows that defendant truck driver was driving, and intended to drive, east through the intersection on what would be the south half of Pine Avenue if the lateral boundary lines thereof were prolonged and extended through the intersection from west to east. Plaintiff was driving northerly in the intersection on what would be the right or easterly half of Chino-Corona Road, if the lateral boundary lines thereof were prolonged and extended northerly. It was his intention to turn to his left or to the west.

Viewing the evidence in its most favorable light, defendant truck driver was proceeding in a lawful manner on his proper and intended course within the intersection. (*Mathis* v. *Bzdula,* 1936, 122 Conn. 202 [188 A. 264, 265]; sec. 86, Veh. Code.) Plaintiff was about to negotiate a turn to the left at the intersection. The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. (Sec. 551, Veh. Code; *Ekwall* v. *Los Angeles Hat Co.,* 105 Cal.App. 300 [287 P. 545].) Plaintiff continuously observed the oncoming truck for a distance in excess of 300 feet. He erroneously believed that the truck driver was going to turn to the south even though no signal was given by him indicating such a turn. Notwithstanding these observations, plaintiff drove immedi-

ately in front of the oncoming truck and in its pathway. Plaintiff realized that if the truck driver did not make the turn plaintiff was going to "get hit." Unfortunately, plaintiff acted upon an erroneous assumption.

The question of negligence and contributory negligence is generally one of fact where the driver looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed, distance or course, or for some other reason assumes he could avoid injury to himself. (*Kienlen* v. *Holt*, 106 Cal.App. 135 [288 P. 866].) The trial court was fully justified in finding that plaintiff was guilty of negligence and that such negligence was the proximate cause of the injury. (*Mathes* v. *Aggeler & Musser Seed Co.*, 179 Cal. 697 [178 P. 713]; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 P. 675]; *Peel* v. *California Belting Co., Inc.*, 108 Cal.App. 93 [291 P. 219].) Whether or not defendant was negligent in failing to turn his truck to the right and avoid colliding with plaintiff's car was a question of fact for the trial judge. In view of the finding of negligence on the part of plaintiff, the question of defendant's negligence becomes immaterial on this appeal. The decision of the trial court on issues of fact is conclusive on appeal where there is any substantial evidence tending fairly to support the decision and finding. (*Robinson* v. *Robinson*, 159 Cal. 203 [113 P. 155]; *Tench* v. *McMeekan*, 17 Cal.App. 14 [118 P. 476].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.