[Civ. No. 7464.   Third Dist.   June 22, 1948.]

FRED R. SEAFORD et al., Appellants, v. L. C. SMITH et al., as Administrators, etc., Respondents.

Alfred E. Frazier for Appellants.

Carlton & Shadwell and I. C. Smith for Respondents.

THOMPSON, J.—Plaintiffs have appealed from a judgment of dismissal of their action, which was rendered pursuant to an order granting a nonsuit at the close of their evidence. The suit was brought against the estate of Frank Cedric Schott, deceased, for damages to real and personal property, resulting

from the alleged negligence of the deceased while he was engaged in repairing a butane gas tank. The gas was released from the tank in the presence of an open electric motor attached to a refrigerator. It evidently came in contact with the spark from the motor, causing an explosion and a fire which completely consumed plaintiffs' cottage, household goods and equipment.

The complaint alleges that plaintiffs, Mr. and Mrs. Seaford, owned a five-room cottage at Burney in Shasta County, containing a partially enclosed porch adjacent to the kitchen at the rear of the house. A doorway connected the kitchen and the porch. A 55-gallon upright tank of butane gas was installed on the porch and connected with the kitchen stove. A few feet distant a "Norge" refrigerator, to which there was attached at the bottom thereof an open electric motor, was being operated near the door in the kitchen. Mr. Seaford joined the Navy and left home. He leased the property April 1, 1945, to Mrs. Florence Neptune, who, with her family occupied the cottage at the time of the accident. The lessee furnished the house with her furniture and equipment.

On July 8, 1945, Mrs. Florence Neptune observed that the butane gas tank was leaking at the top. It continued to leak, and on the morning of July 10th she asked her son Murray to tell Mr. Schott, a local butane gas agent, who supplied the gas, to come and repair the leak. Within an hour thereafter, Mr. Schott appeared at the house in company with her son, Murray. Schott brought with him a wrench and other tools with which to perform the service. Her son Murray accompanied him. The complaint alleges that "Frank Cedric Schott, was employed to make repairs to a certain Butane tank located in the above described premises." The evidence shows that Mrs. Florence Neptune stood in the open doorway between the kitchen and the porch and watched the operation. She testified that, without removing the tank or detaching the electric wire connecting the electric motor of the refrigerator, or turning off the electric switch, Schott lit a match and ignited the escaping gas at the top of the butane gas tank, and immediately blew out the flame. He then took the wrench and released a plug in the tank and the gas rushed out, as the witness said, with an "awful noise" like a locomotive engine blowing off steam. She said, "It [the gas] was just going right up high, hitting the roof of that porch." The witness said "I couldn't stand the noise, so I just turned

around. . . . I walked across that kitchen to the diningroom and half way through the livingroom'' when a flash and explosion occurred. The porch and rooms were filled with flame, and the windows were blown out. Both Mrs. Neptune and her son were badly burned, and Mr. Schott was also seriously burned. He died about a year later. The house and its contents were entirely consumed by the fire which resulted from the explosion. An expert witness testified to the highly explosive nature of butane gas and the great danger of handling that commodity. He said that it would readily ignite and explode if the gas came in contact with a flame or the spark from an electric motor of a refrigerator, and that due care would require the turning off of the electric switch or the disconnecting of the electric motor before the gas was released from the tank, or the removal of the tank to the back yard before the plug was released and the pressure reduced by the escaping of gas.

At the close of plaintiffs' evidence, the defendants moved for a nonsuit on the grounds that there was a lack of evidence showing that Mr. Schott was employed by plaintiffs to repair the tank, that he was an expert in the handling of butane gas, or engaged in the business of repairing such tanks. On the contrary, it was contended he was a mere volunteer who offered his services without pay and as an accommodation, and that there is no evidence of the real cause of the explosion or of his negligence. That motion was argued, submitted and taken under advisement. On the day the motion was determined, but before the decision was rendered, plaintiffs' attorney asked leave to open the case for further corroborating evidence that Mr. Schott was engaged in that vicinity as a dealer and serviceman for butane gas and its equipment and that, as such, he had full knowledge of the danger of handling that commodity and its necessary equipment. The attorney said that he had two available witnesses who would so testify, but that he had not previously called them because he thought that the evidence adduced was adequate for that purpose.

Four days later the court denied plaintiffs' motion to reopen the case for further evidence, and granted the defendants' motion for a nonsuit. Judgment that plaintiffs take nothing by their action was accordingly rendered and entered.

Regarding the grounds for granting the nonsuit, the court said: "It just seemed to me . . . there wasn't sufficient evidence that the deceased did something which an ordinarily reasonable and prudent man under the same circumstances,

. . . would not do, or omitted to do something [such person] . . . would have done.'' The court also stated that there seemed to be a lack of evidence as to ''just what did cause the explosion and fire,'' except by inference or speculation.

We are impelled to hold that the court erred in granting the motion for a nonsuit at the close of plaintiffs' evidence. There appears to be ample evidence, including the reasonable inferences to be drawn therefrom, that Mr. Schott was a distributor of butane gas in that small community; that he was employed to repair the leaking tank; that he was negligent in that undertaking in failing to detach the connection with the open electric motor of the refrigerator, or in first throwing the switch and turning off the electricity before opening the valve and permitting the gas to escape, and that the spark from the motor was the cause of the explosion which resulted in the fire. We are of the opinion there was sufficient evidence to have supported a judgment in favor of the plaintiffs, in the absence of any evidence in rebuttal thereof.

The rule with respect to a motion for nonsuit at the close of plaintiffs' case gives to them the benefit of full credit for all favorable evidence, together with the reasonable inferences to be drawn therefrom. Upon such motion the court may not weigh the evidence nor discredit the witnesses. If the evidence of a witness is conflicting, his statements most favorable to the plaintiff must be accepted as true. (*Mastro* v. *Kennedy*, 57 Cal.App.2d 499 [134 P.2d 865] ; *Estate of Rabinowitz*, 58 Cal.App.2d 106 [135 P.2d 579] ; *Williamson* v. *Pacific Greyhound Lines*, 78 Cal.App.2d 482, 485 [177 P.2d 977] ; *Mastrangelo* v. *West Side Union High School Dis.*, 2 Cal.2d 540 [42 P.2d 634] ; 9 Cal.Jur. § 35, p. 551; 5 Cal. Jur. 10-Yr. Supp. (1944 Rev.), § 35, p. 267.) In the text last cited it is said :

''If the motion is presented at the close of plaintiff's case, its purpose and effect are those of a demurrer to the evidence; and the court, therefore, assumes the truth of and accords full credit to all relevant evidence that is favorable to the plaintiff. . . .

''. . . Evidence which is favorable to the plaintiff's case is, as above noted, to be assumed to be true, and evidence which contradicts the evidence in favor of the plaintiff is to be disregarded. . . .

''. . . Nor will the court weigh the evidence or pass on the credibility of witnesses.''

We may assume, in the present case, that the court had a sound discretion in denying plaintiffs' motion to open the case for further testimony, with which we may not interfere. But, nevertheless, we are of the opinion the evidence which was adduced was adequate, in the absence of rebuttal thereof on the part of the defendants, to require a denial of the motion at that stage of the trial.

Two witnesses testified that Mr. Schott was a local agent for butane gas in the town of Burney. He "did install tanks in town." Florence Neptune testified that she was told he installed the tank in the Seaford cottage. There was no objection to that evidence. She said, "He has the agency for it I understand. . . . And he filled the tank." It has been held that "incompetent evidence admitted without objection is to be regarded as sufficient to establish the fact." (*Mercantile Trust Co.* v. *Sunset Road Oil Co.*, 176 Cal. 461, 466 [168 P. 1037]; *Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P.2d 156]; 2 Cal.Jur. § 473, p. 804.) The last-mentioned witness testified that, when she discovered the escaping gas, she sent her son Murray for Mr. Schott to come and repair the leak; that within an hour he arrived with a wrench and proceeded to work on the tank; that she stood in the open doorway within a few feet of the tank and observed the entire transaction; that the "open motor" beneath the refrigerator was attached and operating; that Schott took charge of the transaction and directed Murray Neptune how to assist him; that Schott first lit a match and applied it to the escaping gas at the top of the tank, and immediately blew out the flame which followed; that no other match or light was lit; that he then opened the valve or removed the plug, and that the gas rushed out with a terrible noise and filled the room; that she turned away and walked through the kitchen, and that an explosion immediately followed and the gas in the rooms burst into flame and destroyed the property.

The respondent contends that the presumption created by section 1963, subdivision 4, of the Code of Civil Procedure, that "A person takes ordinary care of his own concerns" is conclusive of the fact that Mr. Schott turned off the electricity connected with the motor of the refrigerator and performed all acts necessary to assure the safety of releasing the butane gas. But that is a mere presumption to be weighed with the evidence adduced on that subject and the reasonable inferences to be drawn therefrom. As we have

previously held, the court may not weigh the evidence in determining a motion for nonsuit at the close of plaintiff's case. The inference from the evidence adduced is that the electricity was not turned off. Mrs. Seaford testified that she was at the cottage the day before the fire occurred, and that the electric refrigerator was then connected and operating. Mrs. Neptune testified that the house was wired for electricity; that the electric refrigerator was connected and operating at the time Mr. Schott "came to work on this tank"; that it had been running ever since she took possession of the cottage; that she stood at the open door to the porch during the entire operation and watched the transaction; that Mr. Schott did not inquire whether the electricity had been turned off. She was then asked, "Did he, to your knowledge, shut off any gas or electrical appliances?" to which she replied, "No." Moreover, Mr. Foresman, the expert witness, was asked a hypothetical question, including the following language, If "some person removed one of the plugs from the top of the Butane tank *without first turning off the electric current* in the house *and without otherwise checking for fire or sparks of any kind,*" etc., would the spark of the electric refrigerator have ignited the Butane gas? To that question he replied "Yes, it could have." He was then asked if the workman should have anticipated that an explosion would follow the releasing of the gas under such circumstances, to which he replied, "Well, if you handled Butane you should have known, yes, that there would have been an explosion and fire." Those questions were not objected to on the ground that there was no evidence to support the inference that the electricity had not been turned off. The objection to the questions was merely that it did not appear that Mr. Schott was an expert or that he should have known, in the exercise of ordinary care, that the spark of an electric motor was likely to cause an explosion. The foregoing evidence clearly infers that the electric motor was not shut off or disconnected. It furnishes adequate evidence of the cause of the explosion to require the denial of the motion for nonsuit. It furnishes some evidence rebutting the previously mentioned presumption of due care. The court was not authorized to weigh the evidence in that regard. The expert witness testified to the highly explosive and inflammable nature of butane gas; that the specific gravity of that gas would tend to cause it to settle to the floor; and that the spark from an electric motor would ignite butane gas coming in contact with

it. He also testified that due care would require a person to turn off an electric switch or disconnect an electric motor on a refrigerator before releasing the gas from a tank in its immediate vicinity.

The reasonable inferences from the evidence in this case indicate quite satisfactorily that Mr. Schott was not working on the tank as a mere volunteer. On the contrary, it appears that he was an agent or dealer in butane gas in the town of Burney; that he furnished the gas with which the tank was filled; and that he knew, or should have known, of the great danger of releasing the gas in the presence of an electric motor attached to a refrigerator, without first disconnecting it or switching off the electricity, and that the explosion and fire were the proximate result of that negligence. Mr. Schott promptly responded to the request to repair the leak in the tank, and brought with him his tools for that purpose.

The judgment is reversed and the court is directed to overrule the motion for nonsuit and to proceed with the trial on its merits.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied July 15, 1948, and respondents' petition for a hearing by the Supreme Court was denied August 19, 1948.