[S. F. No. 18398.   In Bank.   Nov. 2, 1951.]

VERNON REYNOLDS, a Minor, etc., et al., Appellants, v. JOHN MELVIN FILOMEO et al., Respondents.

Brown, Smith & Ferguson, Jacqueline Taber and Heber J. Brown for Appellants.

Clark & Heafey, Richard Belcher and Gerald P. Martin for Respondents.

SPENCE, J.—This is an appeal by plaintiffs in a personal injury action, wherein a judgment of nonsuit was entered at the close of plaintiffs' case. In challenge of the propriety of such adverse ruling, plaintiffs rely on the settled principle that a judgment of nonsuit can be supported only if "disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Blumberg* v. *M. & T. Inc.*, 34 Cal.2d 226, 229 [209 P.2d 1]; also *Andre* v. *Allynn*, 84 Cal.App.2d 347, 348 [190 P.2d 949]; *Seaford* v. *Smith*, 86 Cal.App.2d 339, 343 [194 P.2d 792]; *Karstensen* v. *Western Transportation Co.*, 93 Cal.App.2d 435, 438 [209 P.2d 47].) An examination of the record sustains plaintiffs' position that the trial court was "not justified in taking the case from the jury." (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768].)

Preliminarily, these observations should be made as to the identity of the parties. On November 5, 1948, plaintiffs Vernon and James Reynolds, aged 19 and 21 years, respectively, were riding as guests in a Ford coupé, which was owned and operated by one Joseph Brenner, also 21 years of age. The Ford coupé collided with an oncoming Buick automobile, which was being driven by one John Melvin Filomeo. Originally the complaint herein included as a defendant said Joseph Brenner. Prior to the trial the action was dismissed as to him without prejudice; and he testified as a witness for plaintiffs. The trial proceeded against the remaining defendants,

Mr. and Mrs. John Melvin Filomeo, the latter being so named as a party because of her alleged joint ownership of said Buick automobile. In the discussion which follows, the word "defendant" will be used with reference to John Melvin Filomeo, driver of the Buick car.

Pursuant to the settled rule for testing the propriety of a nonsuit, the facts will be set forth in the light most favorable to plaintiffs; and the testimony of defendant, called as a witness by plaintiffs under Code of Civil Procedure, section 2055, will be included only where necessary for a full understanding of the case.

The accident occurred about 11:15 o'clock at night at a point approximately 108 feet west of the intersection of Highway 24 and Meadow Lane in Contra Costa County. Joseph Brenner, driver of the Ford coupé in which plaintiffs were riding, was proceeding easterly on Highway 24 towards Concord. Plaintiff James Reynolds was sitting in the front seat with Brenner, and plaintiff Vernon Reynolds was sleeping on the rear seat, with the result that the latter was unable to give any account of the circumstances of the accident. The highway was divided by a white line into two lanes, each 12 feet wide. The weather was clear and the road surface was dry. Brenner's Ford coupé was in good condition mechanically, the windshield was unobstructed, and the headlights were lighted. At the same time defendant, John Melvin Filomeo, was driving his Buick automobile westerly on Highway 24, at a speed which he estimated to be 45 to 50 miles an hour. No other traffic was approaching from the east. There was a car ahead of the Ford which passed the Buick approximately at the intersection of Highway 24 and Meadow Lane.

At and westerly of the intersection, and on the north side of Highway 24 (the opposite side from that on which the Ford was traveling) was an area fronting the "Four Corners Cafe," where there was a lighted neon sign and a lighted billboard. On the south side of the highway there were three other commercial buildings, but none of these was open for business at that hour of the night. With the exception of these mentioned business establishments, the property both east and west of Meadow Lane is orchard and farm land, with occasional farmhouses. Brenner was driving his Ford at the rate of 45 to 50 miles per hour, but upon nearing the café and intending to turn left across the highway so as to enter the off-road parking area fronting the café, he slowed

the Ford to a speed of 10 to 15 miles per hour. Before making the turn, Brenner testified that he checked the highway to the east and James Reynolds testified that he looked upon the highway in both directions. Each testified that he did not see any vehicle approaching. Brenner then turned left and just as the front wheels of the Ford reached the northern border of the highway strip, the Buick struck it slightly to the rear of its right door. The force of the impact threw the occupants of the Ford out of the car, and plaintiffs James and Vernon Reynolds were severely injured.

Defendant was familiar with the intersection and the buildings in the vicinity, for he traveled the highway daily going to and from work. When he was about 125 yards east of the intersection, he saw the headlights of two cars approximately 100 feet apart, coming toward him in the eastbound lane. The first car passed him as he reached the intersection, and the Ford was then still 150 feet in front of him. He could not estimate its rate of travel nor did he slacken his own speed from the 45 to 50 miles per hour at which he was driving as he approached the intersection. When he was 20 to 50 feet from the Ford, he claims that it abruptly turned in front of him. He neither sounded his horn nor attempted to pull to either side of the road. He applied his brakes and skidded 24 feet straight forward to the point of impact, approximately 108 feet west of the intersection. The headlights were lighted and his car was in good mechanical condition. The Ford was thrown forward and in a semicircle by the force of the collision, coming to rest off the road and facing south. Brenner claims that he did not see the Buick at all before the crash; plaintiff James Reynolds testified that he did not see it until it was about "a foot away," when "all at once [he] noticed [a] light to [his] right." Upon conclusion of plaintiffs' case, the court granted a nonsuit upon the ground that there was no evidence of defendant's negligence.

In considering the propriety of the judgment of nonsuit, the record presents these evidentiary matters as questions of fact for the determination of the jury in resolving the disputed claim of defendant's negligence: (1) whether or not defendant was driving the Buick car without its headlights burning; (2) whether or not defendant was driving his car at an excessive speed under the circumstances; and (3) whether or not defendant, admittedly familiar with the area, acted as a reasonable man in an attempt to avoid the accident.

Plaintiffs first contend that defendant was chargeable with

negligence in relation to the burning of the headlights as he drove the Buick down the highway. Preliminarily it must be noted that Brenner, by reason of evidence clearly showing that at a point approximately 108 feet from the intersection he made a left turn in the face of an approaching vehicle, was unquestionably negligent unless defendant was driving his car with the headlights unlighted. ■ However, Brenner's negligence is not imputable to his guests, plaintiffs James and Vernon Reynolds. (*Donat* v. *Dillon,* 192 Cal. 426, 428 [221 P. 193]; *King* v. *City of Long Beach,* 67 Cal.App.2d 1, 6-7 [153 P.2d 445], and cases there cited.) ■ So pertinent is this testimony of the occupants of the Ford in checking the highway before the left turn was undertaken: plaintiff James Reynolds' statement that while he was "not particularly" looking for approaching vehicles, he "glanced up the road" and saw none; Brenner's claim that he too looked for oncoming traffic on the highway and saw none; and then the added assertion of plaintiff James Reynolds that practically at the instant of collision, when the Buick was but "a foot away," he saw its lights. Such evidence would sustain an inference that defendant, although he testified to the contrary, was driving the Buick without its headlights burning and then suddenly switched them on just before the impact. Similar evidentiary questions have arisen in railroad cases where despite positive testimony that a signal warning was given, witnesses at the scene testified that they did not hear it and their failure to hear was held to be "some evidence that no such signal was given," creating a conflict properly left to the jury to resolve. (*Thompson* v. *Los Angeles & S. D. B. Ry. Co.,* 165 Cal. 748, 752 [134 P. 709]; also *McKinley* v. *Southern Pac. Co.,* 80 Cal.App.2d 301, 307 [181 P.2d 899]; *Saphire* v. *Los Angeles Transit Lines,* 99 Cal.App. 2d 880, 884 [222 P.2d 956].) Accordingly here the court should have permitted the jury to pass upon the question of whether defendant's headlights were burning at all times pertinent to the happening of the accident.

There next arises the matter of the speed at which defendant was driving on the stretch of highway here involved. There was some evidence to show that the number of commercial buildings in that vicinity was sufficient to satisfy the statutory definition of a business district (Veh. Code, § 89), but the uncontradicted evidence showed that the area was not signposted as provided in section 468 of the Vehicle Code.

The permissible speeds at which vehicles lawfully may

travel in various areas are covered by sections 510 and 511 of the Vehicle Code. Section 510 contains the basic speed law; namely, "no . . . speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." Section 511 provides that the "speed of any vehicle . . . not in excess of the limits specified in this section . . . is lawful unless clearly proved to be in violation of the basic rule declared in Section 510," but that a speed in excess of the limits fixed by section 511 is prima facie unlawful. The section then fixes 25 miles per hour as the permissible speed in a business district, and, with certain other exceptions not here involved, 55 miles per hour in all other areas.

Plaintiffs contend that the prima facie speed limit of 25 miles per hour applies to any area in which the number of buildings is sufficient to bring it within the definition of a business district as defined in section 89 of the Vehicle Code; and that the question of the nature of the district and of the applicable prima facie speed limit therefore was a question of fact for the jury under the evidence, despite the fact that there was no evidence that the area was signposted. Defendant, on the other hand, contends that there was no such question for the jury's determination in the absence of any showing that the area was signposted. (*Cavalli* v. *Luckett,* 40 Cal.App. 2d 250, 253-254 [104 P.2d 708] ; *Noble* v. *Kertz & Sons Feed & Fuel Co.,* 72 Cal.App.2d 153, 157-158 [164 P.2d 257].) In reply, plaintiffs point out that the cases cited by defendant were decided prior to the 1947 amendment to section 758 of the Vehicle Code (Stats. 1947, ch 1256, § 5, p. 2770) and claim that they are no longer applicable. ▆ We have concluded, however, that said 1947 amendment made no change in the substantive law relating to prima facie speed limits but merely effected a procedural change in relation to the proof of the violation thereof.

The substantive provisions relating to prima facie speed limits, both before and since the 1947 amendment to section 758 of the Vehicle Code, have been set forth in section 511 of that code. It is there provided, after excepting certain types of areas, that "fifty-five miles per hour" is the prima facie speed limit "under all other conditions unless a different speed is established as provided in this code *and signs are in place giving notice thereof.*" (Italics added.) ▆ Construing said section 511 with the sections relating to signposting

(Veh. Code, §§ 465, 468, 468.1), it seems clear that the Legislature intended that the prima facie speed limit for a business or residence district should not apply in any area "unless . . . signs are in place giving notice thereof." This is a reasonable construction, for otherwise every motorist, without the aid of warning signs showing a lower prima facie speed limit, would be required to direct his attention to the surrounding area rather than to the highway, and to estimate the number of structures within given distances in order to determine at his peril what might be the prima facie speed limit in each particular area along his route of travel. Such a requirement would neither tend toward promoting safety nor the expedition of the flow of traffic upon our heavily traveled highways.

In view of these substantive provisions relating to prima facie speed limits, the procedural change made by the 1947 amendment to section 758 of the Vehicle Code seems entirely clear. Prior thereto, any person who sought to charge another with a violation of the prima facie speed prescribed for a business or residence district was compelled to prove in the first instance that (1) the area in question fell within the definition of such a district, (2) speed restriction signs had been erected, and (3) the speed traveled was in excess of that prescribed. (*Cavalli* v. *Luckett, supra,* 40 Cal.App.2d 250, 253-254; *McGough* v. *Hendrickson,* 58 Cal.App.2d 60, 66 [136 P.2d 110]; *Noble* v. *Kertz & Sons Feed & Fuel Co., supra,* 72 Cal.App.2d 153, 157.) The prior provisions of section 758 declared that every highway should be "conclusively presumed" to be outside of a business or residence district unless its "nature" was clearly shown and it was "duly signposted when and as required by this code." The 1947 amendment eliminated the conclusive presumption as to what was outside of a business or residence district, and substituted therefor a rebuttable presumption as to what was included within a business or residence district. It read as follows: "In any action involving the question of unlawful speed of a vehicle upon a highway which has been signposted with speed restriction signs of a type complying with the requirements of this code, it shall be presumed that existing facts authorize the erection of such signs and that the prima facie speed limit on such highway is the limit stated on such signs. This presumption may be rebutted." This new rebuttable presumption did no more than to permit a person to make out a prima facie case of a violation of a prima facie speed limit

for a business or residence district by showing (1) the erection of speed restriction signs and (2) speed in excess of that prescribed. It thus eliminated the necessity for proof in the first instance of the nature of the district, no doubt upon the theory that speed restriction signs would ordinarily be erected only in those districts which were of a nature as to permit of such restrictions. However, it expressly made the presumption a rebuttable one. ■■ But the amendment made no change in the substantive law relating to speed restrictions and now, as before, no area has the prima facie speed limit of a business or residence district unless it is signposted. We therefore conclude that in the absence of any evidence showing the signposting of the area here involved, there was no question to be submitted to the jury with respect to any alleged violation of the prima facie speed limit prescribed for a business district.

■■ However, plaintiffs also argue that assuming the place of the accident to be a zone with a prima facie speed limit of 55 miles, it was not prudent and was a violation of the basic speed law (Veh. Code, § 510) for defendant to drive along the stretch of highway here involved at the time of night in question—11:15 p.m.—at the speed he testified he was traveling, 45 to 50 miles per hour. He knew the conditions at the intersection of the highways: that on his right and adjoining the crossroads was an area of more than 100 feet, furnishing parking space as well as entrance and exit facilities for use in connection with the public's patronage of the Four Corners Cafe; that on his left and across from the restaurant were three other commercial establishments, though not then operating because of the late hour. He likewise knew that the restaurant was then open for business, for the electric sign over its entrance so indicated. Moreover, defendant admittedly saw two oncoming cars approaching the intersection from the west as he approached it from the east. Whether or not as a prudent person, defendant should have anticipated the possibility that one or the other vehicle might turn either at the intersection or into the café parking area was a question for the jury. The frontage space of the café was well lighted. ■■ Whether defendant should have observed that Brenner's approaching Ford had reduced its speed preparatory to making the left turn across the highway, if it did as plaintiffs maintain, was likewise a matter for the jury's determination. ■■ In this connection, it must be remembered that "the mere fact that one is traveling at a lawful speed does not

necessarily mean that he is free from negligence.'' (*Inouye* v. *Gilboy Co.*, 115 Cal.App. 25, 28 [300 P. 835].)

Furthermore, in assuming the place of the accident to be a 55 mile zone, there also remained for the jury's determination the matter of accrediting defendant's testimony as to his speed of travel. Having due regard for the appropriate reaction time to be allowed defendant for realization of the necessity for acting in the perilous situation, the skid of 24 feet, the force of the impact, the damage to both cars and all the attending circumstances, it cannot be said as a matter of law that defendant was not driving in excess of 55 miles per hour. Defendant unavailingly argues that there was no direct testimony that his speed was different than as he stated it in giving his account of the accident at the trial, and he cites *Corcoran* v. *Pacific Auto Stages, Inc.*, 116 Cal.App. 35, 38 [2 P.2d 225], for the proposition that ''it will not be presumed that [he] was violating the law.'' From the record it appears that neither Brenner, the driver of the Ford automobile, nor plaintiff James Reynolds could testify as to the speed of defendant's oncoming Buick, for they claimed not to have seen it approaching. It does not require direct testimony to overcome defendant's statement if the indirect or circumstantial evidence does so. Moreover, such circumstances might overcome the presumption that defendant was obeying the law; and, as the record here stands, the jury might have so concluded in determining the credence to attach to the testimony of the respective witnesses. *Spolter* v. *Four-Wheel Brake Service Co.*, 99 Cal.App.2d 690, 696-697 [222 P.2d 307].)

Finally, there is the consideration of plaintiffs' claim as to defendant's failure to avoid the collision. Of course, no one suddenly confronted with an unexpected peril is to be held responsible for omitting precautions which hindsight might indicate would have avoided the accident. He is required to do only what a reasonable and prudent person would do in a like situation. ''In every such emergency it is a question for the trier of fact to determine whether the person acted with reasonable care under all the circumstances.'' (*De la Motte* v. *Rucker*, 55 Cal.App.2d 226, 233 [130 P.2d 444].) Whether or not defendant could have avoided striking the Ford automobile would depend in part on how much of his version of the accident the jury might accredit. To this point plaintiffs urge that the shoulder area adjoining defendant's lane of traffic was shown, by photographs in evidence,

to have been well surfaced, and that defendant should have turned his Buick to the right in avoidance of the Ford as he saw it crossing the highway, instead of bearing straight down the road, hopeful that the application of his brakes would slow his car sufficiently to escape the otherwise inevitable crash. At any rate, it cannot be said, as a matter of law, that under all the circumstances of this case, a reasonably prudent person, after the time when a jury might find that defendant should have realized the danger, would or would not have attempted to turn his car in an effort to avoid the collision, or would have succeeded in avoiding it had he acted to change the direction of his car. These were all questions for the consideration of the trier of the facts. (*Betschart* v. *Steel*, 61 Cal.App.2d 517, 522 [143 P.2d 81].) Cases like *Curry* v. *Williams*, 109 Cal.App. 649 [293 P. 623], *Sinclair* v. *Harp*, 18 Cal.App.2d 167 [63 P.2d 876], and *De la Motte* v. *Rucker*, *supra*, 55 Cal.App.2d 226, where the collision was caused by one vehicle turning abruptly in front of an oncoming car are not in point here because of different factual considerations incident to the place of the accident or the course of conduct of the respective motorists. In *Podeszwa* v. *White*, 99 Cal. App. 2d 777 [222 P.2d 683], where the defendant was held liable for damages, the facts relating to defendant's failure to swerve his truck and so avoid the collision are more nearly similar to those here involved. However, each case turns upon its own facts and the inferences that may reasonably be deduced therefrom.

In conformity with the foregoing observations, it is our conclusion that the record contains "evidence of sufficient substantiality to support a verdict in favor of the plaintiff[s]" (*Blumberg* v. *M. & T. Incorporated*, *supra*, 34 Cal.2d 226, 229), and that the trial court accordingly erred in granting the motion for a nonsuit.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Schauer, J., concurred in the judgment.